[Civ. No. 12371. Fourth Dist., Div. Two. July 23, 1973.]

BAUM ELECTRIC COMPANY, Plaintiff and Appellant, v.
CITY OF HUNTINGTON BEACH et al., Defendants and Respondents.

## COUNSEL

Acret & Perrochet, Nicholas J. Toghia and James M. Baratta for Plaintiff and Appellant.

Don P. Bonfa, City Attorney, and James Georges, Deputy City Attorney, for Defendants and Respondents.

## OPINION

**TAMURA, J.**—Petitioner applied to the Building and Safety Department of the City of Huntington Beach for a permit to do electrical work in a housing tract "with the understanding that . . . aluminum non-metallic sheathed cable, be accepted for installation. . . ." The director of building and safety (building director) denied the application citing his prior administrative order prohibiting the use of aluminum electrical conductors AWG sizes 6 and smaller in single family and duplex dwellings. Following unsuccessful appeals to the board of appeals and to the city council, petitioner sought a writ of mandate in the court below to compel issuance of the permit, alleging its application complied with all applicable statutes, ordinances and regulations and that the building director's administrative order was invalid. Respondents answered denying that petitioner's application complied with legal requirements for the issuance of a permit.

At the outset of the trial, the court exacted from the parties a stipulation that only two issues were before the court: (1) Whether the building director had "discretion" to impose restrictions on the size of aluminum electrical conductors which could be used and (2) if he had such "discretion," whether he exercised it arbitrarily or capriciously. The court answered the first question in the affirmative. Following that ruling, petitioner elected not to try the second issue but instead stipulated that assuming the correctness of the court's resolution of the first issue, the building director did not abuse his "discretion" in issuing his administrative order. Judgment was thereupon entered denying the petition. Petitioner appeals from the judgment.

The thrust of petitioner's argument is as follows: The 1970 amend-

ments to the State Housing Law (Health & Saf. Code, § 17910 et seq.)[1] mandated statewide uniformity in the promulgation and enforcement of building code regulations by requiring the State Commission of Housing and Community Development (State Housing Commission) and local entities to adopt and enforce the requirements of the uniform codes specified in section 17922, including the National Electrical Code, 1968 edition (hereinafter N. E. Code);[2] the N. E. Code permits use of aluminum electrical conductors sizes 2 through 12; the state law and regulations issued thereunder have thus preempted the field of building regulations and the building director's administrative order is therefore invalid.

For reasons which follow, we have concluded petitioner's attack upon the building director's order must fail.

## I

Preliminarily, we shall review the pertinent provisions of the State Housing Law and the rules and regulations promulgated thereunder.

Prior to the 1970 amendments, the State Housing Law empowered local agencies to enact building regulations imposing standards "equal to or greater" than those promulgated by the state (§ 17951) and the state statutes and regulations were made inapplicable in any city having and enforcing such local regulations (§ 19825). State building requirements therefore did not preempt the field of building regulation. (*City of Bakersfield* v. *Miller,* 64 Cal.2d 93, 100-101 [48 Cal.Rptr. 889, 410 P.2d 393].)

In 1970 the Legislature amended section 17951 by deleting the provision authorizing local agencies to adopt ordinances imposing standards "equal to or greater" than those promulgated by the state, repealed section 19825 and made other substantial revisions in the State Housing Law. (Stats. 1970, ch. 1436.) The revisions directed the State Housing Commission to adopt rules and regulations imposing "the same requirements" as are contained in the various uniform building codes, including the N. E. Code (§ 17922), and required every city and county to adopt ordinances or regulations imposing the same requirements within one year after the effective date of the 1970 amendments (Nov. 23, 1970). (§ 17958.)

Pursuant to the legislative mandate, the State Housing Commission adopted a regulation providing that all buildings for human habitation

---

[1]All section references hereinafter are to the Health and Safety Code unless otherwise indicated.

[2]Unless otherwise indicated, all references to the National Electrical Code are to the 1968 edition.

"shall comply with electrical requirements contained in the [N. E. Code] . . . as applicable," and that its provisions "shall be enforced by the Department or the local government agency so designated as the enforcement agency in division 13, part 1.5,. Health and Safety Code."[3] (Cal. Admin. Code, tit. 25, § 1076.)

The N. E. Code provides in pertinent part: "Nonmetallic sheathed cable shall be an approved Type NM or NMC in sizes No. 14 through 2 AWG with copper conductors and in sizes No. 12 through 2 with aluminum conductors. . . ."

Petitioner urges that the changes wrought by the 1970 amendments clearly indicate a legislative intention to preempt the field of building regulations and to withdraw from local agencies the power (except to the limited extent authorized by §§ 17958.5[4] and 17958.7[5]) to enact regulations imposing standards which differ from or exceed state regulations. It directs our attention to the legislative declaration that "uniformity of codes throughout the State . . . is a matter of satewide interest and concern since it would reduce housing costs and increase the efficiency of private housing construction industry and its production." (Stats. 1970, ch. 1436, § 7.) In light of the history of the 1970 amendments and the declaration of policy, petitioner urges that the Legislature has mandated uniformity in enforcement of building regulations. It is therefore urged that a local enforcement officer has no "discretion" to disapprove use of any material covered by the uniform codes specified in section 17922.[6]

---

[3]Section 17960 provides that the building department of every city or county shall enforce within its jurisdiction "the provisions of this part and rules and regulations promulgated thereunder pertaining to the erection, construction . . . of apartment houses, hotels, or dwellings." Section 17964 permits a city or county to designate "a department organized to carry out the purposes of this part, or an officer charged with the responsibility of carrying out this part, with the enforcement of this part or any rules and regulations promulgated thereunder for the protection of the public health, safety and general welfare as set forth in section 17921; . . ."

[4]Section 17958.5 provides: "In adopting the ordinances or regulations pursuant to Section 17958, a city or county may make such changes or modifications in the requirements contained in regulations adopted pursuant to Section 17922 as it determines are reasonably necessary because of local conditions."

[5]Section 17958.7 provides: "The governing body of a city or county before making any modifications or changes pursuant to Section 17958.5 shall make an express finding that such modifications or changes are needed. Such a finding shall be available as a public record and a copy, together with the modification or change, filed with the department. Nothing contained in this part shall be construed to require the governing body of any city or county to alter in any way building regulations enacted on or before November 23, 1970."

[6]In urging that the state housing law and the N. E. Code compelled the building director to approve use of aluminum electrical conductors sizes 12 through 2, petitioner misquotes, no doubt through inadvertence, section 336-2 of the electrical code

To phrase the issue in terms of "discretion" in the abstract is to state the question too broadly. A fair reading of the limited record before us reveals that petitioner's application for a permit was disapproved because the building director had determined that existing methods of terminating the proscribed sizes of aluminum wire at branch circuits in residential structures, including the method of "pigtailing" copper to aluminum, are unsafe.[7] Thus, the precise question presented by petitioner's attack upon the building director's order is whether a local enforcement officer may impose restrictions on use of aluminum electrical conductors in residential structures where such restrictions are determined to be necessary to safeguard life and property.[8] To state the issue is to answer it.

The State Housing Law cannot be read as an inflexible command to a local enforcement officer to willy nilly approve use of a material or method, even though he has determined it to be hazardous, simply because it is code permitted. The provisions of the N. E. Code indicate its drafters did not contemplate the code specifications to be so construed. They caution that the code was only designed to provide "basic minimum provisions considered necessary for safety" so that compliance "will result in an installation essentially free from hazard but not necessarily efficient, convenient or adequate for good service or future expansion of electrical use" (N. E. Code, § 90-1, subd. (b)); they warn the code is not intended "as a design specification nor an instruction manual for untrained persons" (N. E. Code, § 90-1, subd. (c));[9] they included provisions for the examination

---

as reading "Nonmetallic sheathed cable *shall be approved* . . . in sizes No. 12 through 2 with aluminum conductors." (Italics supplied.) The section actually reads "Nonmetallic sheathed cable *shall be an approved type* NM or NMC in sizes No. 14 through 2 AWG with copper conductors and in sizes No. 12 through 2 with aluminum conductors." (Italics supplied.)

[7]"Branch circuits" are electrical outlets and light switches whose conductors terminate at wire-bending screws. "Pigtailing" is a substitute method for direct connection of aluminum wire to branch circuits.

[8]In view of the stipulation in the court below, we are not called upon to decide the question whether existing methods of terminating aluminum electrical conductors at branch circuits are in fact unsafe or whether the building director acted arbitrarily or capriciously in so determining.

[9]Section 90-1 of the N. E. Code provides: "(a) The purpose of this Code is the practical safeguarding of persons and of buildings and their contents from hazards arising from the use of electricity for light, heat, power, radio, signalling and for other purposes.

"(b) This Code contains basic minimum provisions considered necessary for safety. Compliance therewith and proper maintenance will result in an installation essentially free from hazard, but not necessarily efficient, convenient, or adequate for good service or future expansion of electrical use.

"Hazards often occur because of overloading of wiring systems by methods or usage not in conformity with the Code. This occurs because initial wiring did not provide for increases in use of electricity. For this reason it is recommended that the

and testing of code covered items for safety (N. E. Code, § 90-8);[10] and they provided that "conductors and equipment required or permitted by [the] Code shall be acceptable only when approved" (N. E. Code, § 110-2), defining "approved" as "acceptable to the authority enforcing [the] Code." (N. E. Code, § 100.)

The foregoing provisions of the N. E. Code reveal its draftsmen did not intend to foreclose safety tests of materials or methods covered by the code and disapproval of those found unsafe; they did not contemplate blind enforcing authority approval of the use of a method or material simply because it is covered by the code.

■ Petitioner contends, however, that the Department of Housing and Community Development (Department) is the only agency empowered to disapprove use of code covered material because it is the body empowered to administer and enforce the rules and regulations. While the Department is vested with *supervisory* powers over the administration and enforcement of building regulations, the day-to-day administration and enforcement of the regulations are vested in the local building department. Section 17921 provides *"except as hereinafter provided"* the Department shall enforce the rules and regulations. (Italics supplied.) Section 17960 under chapter 5 entitled "Administration and Enforcement" provides "[t]he building department of every city or county shall enforce within its jurisdiction all the provisions of this part and rules and regulations promulgated thereunder . . ." Moreover, the act provides that enforcement by the Department shall not be initiated except for nonenforcement by a local entity and

---

initial installation be adequate and that reasonable provisions for system changes be made as may be required for future increase in the use of electricity.

"(c) This Code is not intended as a design specification nor an instruction manual for untrained persons."

[10]Section 90-8 of the N. E. Code pertaining to examination of equipment and materials provides: "For approval of specific items of equipment and materials covered by the Code, examinations for safety should be made under standard conditions, and the record made generally available through promulgation by organizations properly equipped and qualified for experimental testing, inspections of the run of goods at factories, and service-value determination through field inspections. This avoids the necessity for repetition of examinations by different examiners, frequently with inadequate facilities for such work, and the confusion that would result from conflicting reports as to the suitability of devices and materials examined for a given purpose. It is the intent of the Code that factory-installed internal wiring or the construction of equipment need not be inspected at the time of installation of the equipment except to detect alterations or damage if the equipment has been listed by an electrical testing laboratory, which is nationally recognized as having the facilities described above and which requires suitability for installation in accordance with the Code."

then only after notice, opportunity to be heard, and decision by the commission. (§ 17952.)[11]

█ Petitioner contends inferentially that the provisions of the N. E. Code to which we have referred and which are contained in articles entitled "Introduction," "Definitions," and "General" were not promulgated by the State Housing Commission as part of the state regulations. It is urged the Legislature only intended the commission to adopt the "technical" or "substantive" provisions. Assuming the Legislature so intended (see 55 Ops.Cal.Atty.Gen. 157, 161), the N. E. Code provisions to which we have referred can hardly be characterized as "administrative" or "clerical." The purpose the code is designed to serve, definitions of the terms used, and the "General" provisions all bear directly upon the proper interpretation and application of the technical provisions. They are substantive, not administrative or clerical.

Petitioner strenuously urges that a decision upholding the building director's order in the case at bench would seriously undermine the uniformity policy mandated by the Legislature. █ While statewide uniformity in the adoption and enforcement of building regulations was unquestionably one of the objectives of the 1970 amendments to the State Housing Law, a correlative, if not the paramount, policy underlying the building regulations is the protection of public health and safety. (§ § 17921, 17964.)[12]

---

[11]Section 17952 provides: "In the event of nonenforcement of this part or the rules and regulations promulgated pursuant thereto, such provisions or rules and regulations shall be enforced by the department in any such city or county after the department has given written notice to the governing body of such city or county of a violation of this part or the rules or regulations promulgated thereunder and the city or county has failed to initiate proceedings to secure correction of the violation within 30 days of the date of such notice. The city or county may request a hearing before the commission pursuant to Section 17930 within said 30 days to show cause for nonenforcement. *Enforcement by the department shall· not be initiated until the decision of the commission, adverse to the city or county, is rendered.*" (Italics supplied.)

[12]Section 17921 provides: "The commission shall adopt, amend, repeal, and, except as hereinafter provided, the department shall enforce rules and regulations for the protection of the public health, safety, and general welfare of the occupant and the public governing the erection, construction, enlargement, conversion, alteration, repair, moving, removal, demolition, occupancy, use, height, court, area, sanitation, ventilation and maintenance of all hotels, motels, apartment houses, and dwellings, and buildings and structures accessory thereto. Such rules and regulations may include a schedule of fees to pay the cost of enforcement by the department under Sections 17952 and 17965."

Section 17964 provides: "A city or county may designate and charge by charter, ordinance or resolution a department organized to carry out the purposes of this part, or an officer charged with the responsibility of carrying out this part, with the enforcement of this part or any rules and regulations promulgated thereunder for the protection of the public health, safety, and general welfare as set forth in Section

It would be unreasonable to assume the Legislature intended that considerations of safety must yield to the policy of uniformity.

■ Petitioner seeks to raise a contention not raised in the court below. It contends the building director's order was void because it was adopted without complying with the provisions of sections 17958.5 and 17958.7 pertaining to the power of a local entity to make changes or modifications in building regulations in order to meet local conditions. By virtue of the stipulations limiting the issues in the court below, petitioner is precluded from raising that question for the first time on appeal. In any event, the contention is without merit. The power of the building director to impose the restriction was not dependent upon a change or modification in the N. E. Code.

We conclude that the State Housing Law and regulations promulgated thereunder did not invalidate the building director's administrative directive.

## II

The city contends that apart from the provisions of the N. E. Code, the building director was authorized to issue his directive under the provisions of the city Electrical Code.

The city enacted an ordinance on September 20, 1971 (effective Oct. 20, 1971) adopting the N. E. Code, subject to "amendments and additions." The additional provisions which are set out in the margin below[13] authorize

17921; provided that this section shall apply to the duties and responsibilities enumerated in Section 17961.5 only if, in the area involved, there is no city or county fire department or fire protection district."

[13]"8221.2 Duties of the Administrative Authority. It shall be the duty of the Administrative Authority to enforce all provisions of this code. He shall upon application, grant or deny permits for the installation or alteration of electrical wiring, devices, appliances and equipment. He shall deny permits in cases where any of the foregoing, or the method by which any of the foregoing is accomplished, is reasonably determined by him to be hazardous or dangerous to persons or property because the method of installation or construction or manufacture results in a condition which is hazardous or dangerous to persons or property, or because such electrical wiring, devices, appliances or equipment is defective or defectively installed. He shall make inspections and reinspections of the installation, maintenance and repair of all electrical wiring, connections, fixtures, appliances, apparatus, machinery, equipment and work inside, outside, overhead, or underground within his jurisdiction. He shall be the official representative of this jurisdiction to the code making body of this code and shall attend, or cause one or more of his assistants to attend all meetings where code changes are considered."

"8221.4 Dangerous Electrical Equipment. When any electrical equipment, or method of installation or manufacture of electrical equipment, is found by the Administrative Authority to be hazardous or dangerous to persons or property because the method of installation or construction or manufacture results in a condition

the building director to deny permits for electrical work where the material, equipment or method is reasonably determined by him to be hazardous or dangerous to persons or property or will cause a condition which is hazardous or dangerous.[14]

which is hazardous or dangerous to persons or property, or because it is defective or defectively installed, the person, firm, or corporation responsible for the electrical equipment shall be notified in writing and shall make any changes or repairs as required by the sections of this code pertaining to electricity or other laws to place such equipment in a safe condition. If such work is not completed within fifteen (15) days or longer periods, as may be specified by the Administrative Authority, said Administrative Authority shall have the authority to disconnect or order the discontinuance of electrical service to said electrical equipment, and any person, firm or corporation or political subdivision ordered to discontinue such electrical service shall do so within twenty-four (24) hours and shall not reconnect or allow it to be reconnected until notified to do so by the Administrative Authority."

"8221.6 Interpretation of Code. In cases where development in the application and use of electricity, or methods of installation, construction, or manufacture of electrical conductors, connectors or other electrical equipment or materials, or special or unusual methods of building construction, creates problems or conditions which are not clearly contemplated by sections of this code pertaining to electricity, and makes literal application of the rule, or rules, impracticable, the Administrative Authority is hereby empowered to make his own rules wherever there is a question as to motive or method or manner in which material shall be installed; provided, however, that any person who feels himself aggrieved by any rule, or rules, made by the Administrative Authority in accordance with the foregoing, or any member of the City Council, shall, within thirty (30) days from the effective date thereof, have the right to appeal to the Board of Appeals of the City for a review and determination of the reasonableness thereof. The determination of the Board of Appeals shall be final unless such determination is appealed to the City Council within ten (10) days thereafter by the appellant, Building Director or any member of the City Council."

"8221.8 Application for Permits. Written applications for electrical permits shall describe the work to be done, and shall be made on the forms provided. The application for electrical permits for installation of electrical wiring or equipment shall be accomplished by such plans, specifications, and schedules as may be necessary to determine whether the installation will be in conformity with the requirements of the sections of this code pertaining to electricity. If it shall be found that the installation will conform to all legal requirements and if the applicant has complied with the provisions of the sections of this code pertaining to electricity, a permit for such installation may be issued. No deviation may be made from the installation described in the permit without the approval of the Administrative Authority. If it shall be found by the Administrative Authority that the electrical equipment is defective or defectively installed, or that such equipment or installation or the method of installation of such is a hazard or danger, or will cause a condition which is a hazard or danger to the safety of persons or property, a permit for such equipment or installation shall be denied by the Administrative Authority."

"8221.33 Listing or Labeling. Listing or labeling, as conforming to the standards of the Underwriter's Laboratories, Inc., as approved by the United States Bureau of Standards, or other similar institutions of nationally-recognized standing, shall be prima facie evidence of conformity with approved standards of safety to life and property."

[14] The city Electrical Code was further amended in April 1972 by the addition of the following section: "8221.5.1 Use of Aluminum Conductors Prohibited. (a) The City Council finds that the acts prohibited by subsection (b) of this section are

Petitioner contends that by virtue of section 17958, the uniform codes named in section 17922 have superseded all local regulations on the subject, including the additional provisions of the city code.[15]

■ The Attorney General has held, however, and we agree, that while the State Housing Commission is not empowered to adopt rules and regulations on subjects not covered by the uniform codes, section 17958 directing cities to adopt regulations "imposing the same requirements" as are contained in the uniform codes does not preclude cities from adopting additional regulations on subjects not covered by departmental regulations. (55 Ops.Cal.Atty.Gen. 157.) The Attorney General stated: "Moreover, a city or county is empowered to make changes or modifications in the requirements contained in regulations adopted by the Department when it determines that such changes or modifications are reasonably necessary because of local conditions. Section 17958.5. The local appeals boards are given the final power to determine whether rules or regulations which have been adopted by the Department are reasonable when applied in the local areas. Section 17925. The legislative sensitivity to, and deference for, local conditions and needs are inconsistent with an interpretation of section 17958 which restricts the cities and counties from adopting ordinances and regulations on particular subjects which, although not covered by the regulations adopted by the Department, may nevertheless have considerable local significance." (55 Ops.Cal.Atty.Gen. 157, 160.)

---

hazardous or dangerous to persons or property and declares that the public health, safety and welfare require such prohibition. (b) It shall be unlawful for any person, firm or corporation either as an owner, architect, contractor, artisan or otherwise, to terminate or to connect to any other conductor, any solid size No. 6 American wire gauge or smaller aluminum conductor in residential construction branch circuit wiring."

The city argues that the foregoing amendment is not in conflict with the provisions of the N. E. Code or the State Housing Law. In view of the fact that the amendment was not in force at the time petitioner's permit was denied, its validity is not properly before us.

[15]On the face of it, section 17958 appears to provide that if a city fails to adopt ordinances or regulations imposing the *same requirements* as contained in the regulations adopted under section 17922, the regulations adopted under the latter section would by operation of law become applicable in such city. The Attorney General, however, has interpreted section 17958 "as having application *only* to the extent that a given building activity to be regulated is not already regulated by an existing city or county building regulation enacted on or before November 23, 1970. To otherwise interpret section 17958 would be to ignore the plain language of the proviso contained in section 17958.7." (54 Ops.Cal.Atty.Gen. 87, 88-89; original italics.) The Attorney General's interpretation of section 17958 and 17958.7 was approved in *People* v. *Wheeler*, 30 Cal.App.3d 282, 290, 291 [106 Cal.Rptr. 260].

The Huntington Beach Electrical Code, however, was adopted after, not before, November 23, 1970, and therefore cannot be upheld under the proviso in section 17958.

Many of the additional provisions of the city Electrical Code relate to subjects not expressly covered by the N. E. Code and state regulations such as duties of the building director, form and content of applications for permits, and methods of handling unusual problems or conditions not contemplated by the N. E. Code. Those provisions of the city code are therefore consistent with section 17958 and valid. The power granted to the building director to deny permits where the electrical wiring or equipment is determined by him to result in a condition which is hazardous or dangerous to persons or property is, as we have explained earlier, also consistent with the provisions of the State Housing Law and the N. E. Code.

We conclude that under both the N. E. Code as promulgated by the State Housing Commission and the city and the additional provisions of the city code, the building director was empowered to disapprove petitioner's application on the basis that use of aluminum electrical conductors of the size specified will create a condition hazardous to persons and property.

Judgment affirmed.

Gardner, P. J., and Kerrigan, J., concurred.