[No. B077228. Second Dist., Div. Three. Dec. 20, 1995.]

SOUTHERN CALIFORNIA GAS COMPANY, Plaintiff and Respondent, v. CITY OF VERNON et al., Defendants and Appellants.

**COUNSEL**

David B. Brearley, City Attorney, and Ronald J. Einboden for Defendants and Appellants.

Woodrow D. Smith, John R. Ellis, Randall R. Morrow, O'Melveny & Myers, James W. Colbert III and Mary Catherine Wirth for Plaintiff and Respondent.

**OPINION**

**KLEIN, P. J.**—Defendants and appellants City of Vernon (Vernon) and Victor H. Vaits, Vernon's director of community services (Vaits) (sometimes collectively referred to as Vernon), appeal a judgment granting a petition for writ of mandate sought by plaintiff and respondent Southern California Gas Company (the Gas Company).

The essential issue presented is whether Vernon can purport to regulate the design and construction of a proposed gas pipeline, notwithstanding the

California Public Utilities Commission's (the PUC) regulatory power in this area.

Because the regulation of pipeline safety is within the exclusive jurisdiction of the PUC, and Vernon did not object to the pipeline on the limited grounds available to it under the franchise it granted the Gas Company, the judgment is affirmed.

### FACTUAL AND PROCEDURAL BACKGROUND

The Gas Company is a privately owned public utility subject to regulation by the PUC. The Gas Company holds a franchise to lay and use pipes and appurtenances beneath Vernon's streets for transmitting and distributing gas. The franchise was granted in 1947 in Vernon Municipal Ordinance No. 607 and is for an indefinite term.

As part of a program to upgrade its regional gas service facilities, the Gas Company has embarked on replacement of various pre-World War II pipelines in the Los Angeles area. Among those is pipeline 765, running from Long Beach to Glendale. A portion of the route for pipeline runs through Vernon. The Gas Company succeeded in obtaining permits necessary to route new pipeline 765 under city streets in Glendale, Los Angeles, Maywood, Bell, Huntington Park, Cudahy, South Gate, Lynwood, Compton, Long Beach and unincorporated areas of Los Angeles County.

On May 11, 1992, the Gas Company submitted a formal application to Vernon for an encroachment permit for a proposed routing under Alcoa Avenue.

On May 28, 1992, the Gas Company submitted a second application for an encroachment permit for an alternative route along Downey Road. The Gas Company was advised Downey Road was the preferable route.

Vernon did not issue a permit for either route. In a June 11, 1992 meeting, Vernon advised the Gas Company its "applications failed to satisfy City requirements in certain respects. Those deficiencies included failing to specify strengthened backfill, proposing to cut the pavement of a newly installed street, proposing a shallow depth for the gas pipeline, and failing to provide for an interconnection with the City's distribution system."

On June 22, 1992, the Gas Company filed an appeal with the Vernon City Council for issuance of an encroachment permit.

On June 24, 1992, the Gas Company filed a petition for writ of mandate to direct Vernon to issue either of the encroachment permits for which it had applied.

On July 24, 1992, the trial court denied the petition without prejudice on the ground the Gas Company had not exhausted its administrative remedies.

The Central Basin Municipal Water District (the Water District) filed a complaint in intervention in the mandate proceeding, contending that it, and not the Gas Company, was entitled to an encroachment permit for the installation of a reclaimed water pipeline in Downey Road.

By a letter dated October 1, 1992, the Gas Company again appealed to the Vernon City Council for issuance of an encroachment permit. The city council held a public hearing on October 29, 1992, and on November 10, 1992, issued its decision in Resolution No. 6180.

In the resolution, Vernon denied the appeal on the following grounds: "1. As of October 1, 1992, the date the appeal was filed, the Gas Company's application and required drawings were deficient and incomplete. [¶] 2. [Vernon ] may prefer the alignment of the Water District's proposed pipeline in a certain location under City streets to the alignment of the Gas Company's proposed pipeline in the same location, so that the Gas Company must change its alignment. [¶] 3. The Water District's alignment was prior in time to the Gas Company's alignment, so that the Gas Company must change its alignment. [¶] 4. Because the City has rescinded the franchise, the Gas Company may not install a large new pipeline."[1]

Following this adverse decision by Vernon, the Gas Company renewed its petition for writ of mandate to the superior court.

In the interim, the Gas Company and the Water District settled their dispute, and the Water District dismissed its complaint in intervention and abandoned all claims to its requested routing. Thus, the remaining grounds to be scrutinized by the trial court were the alleged deficiencies in the Gas Company's plans and Vernon's purported rescission of the franchise.

After taking the matter under submission, on May 11, 1993, the trial court granted the petition, ruling "there was not substantial evidence to support the decision of [Vernon] to deny [the Gas Company's] encroachment permit application. . . . [¶] The findings that [the Gas Company's] plans are deficient are improper as a matter of law. . . . Section 9(c) of the Franchise Agreement limits the nature of review of the City Engineer to a determination of reasonable compliance with a safe location. [¶] According to the

---

[1]The record reflects Vernon moved to rescind the Gas Company's franchise in an effort to create a municipal gas utility to distribute gas to businesses in the city. Vernon contends the Gas Company is charging industrial customers in Vernon discriminatory rates, causing businesses to fail or to relocate.

franchise agreement, [Vernon] has a ministerial duty to issue an encroachment permit. The findings of the City go far beyond the 'ordinary travel or use of the streets' as provided for in section 9. Additionally, [the Gas Company] has agreed to comply with the requests of [Vernon]. . . . [¶] In exercising its duty [Vernon] has abused its discretion. This is true, even if, . . . this court concluded that the duty of the City Engineer was a discretionary one. [¶] [Vernon's] contention that paragraph 10 modifies and enlarges paragraph 9(c) by requiring [the Gas Company] to 'cause the least possible hindrance to the use of the street for the purpose of travel or any other public purpose' is without merit. That section clearly reflects on [the Gas Company's] obligations once construction has begun. [¶] The duties of the City Engineer are not enlarged because there is the ability of [the Gas Company] to challenge his decision to the City Council pursuant to section 21. [Vernon] assert[s], without authority, that this advantage in fact limits [the Gas Company] to a nonappealable decision not subject to review by this Court. In fact, Encroachment Ordinance section 22.88 requires [Vernon] [to] make findings which are akin to a hearing and subject to mandamus. . . . [¶] The contention of [Vernon] that [the Gas Company's] application is incomplete is not supported by the record. . . . [¶] The considerations of rescission of contract were inappropriate. . . . [¶] [Vernon] may not rescind its franchise unless it applies for forfeiture under [Public Utilities Code] section 6291 et. seq."

On May 21, 1993, the trial court denied Vernon's request for a statement of decision, ruling that its "Minute Order of 5-11-93 shall be the Statement of Decision."

On May 25, 1993, the trial court entered judgment granting the Gas Company's petition, directing Vernon to vacate its decision of November 10, 1992 and to issue the encroachment permit for which the Gas Company applied on May 28, 1992.

Vernon filed a timely appeal from the judgment.

### CONTENTIONS

Vernon contends: (1) its decision was supported by substantial evidence; (2) it did not have a clear, present and ministerial duty to issue the encroachment permit; its duty was discretionary and it acted within its discretion; (3) the trial court prejudicially erred in receiving new evidence over Vernon's objection; (4) the statement of decision issued by the trial court was insufficient to explain the factual and legal basis for its decision; (5) the trial court erred in concluding Vernon could not rescind the franchise; and (6) the

judgment should have been limited to a remand to Vernon's city council rather than ordering the issuance of a permit.

### DISCUSSION

1. *Vernon cannot purport to regulate the design and construction of the proposed pipeline.*

■  Article XII, section 8 of the California Constitution states in pertinent part: "A city, county, or other public body may not regulate matters over which the Legislature grants regulatory power to the [Public Utilities] Commission." Thus, under the Constitution, as to matters over which the PUC has been granted regulatory power, the PUC's jurisdiction is exclusive.

In *Los Angeles Ry. Corp.* v. *Los Angeles* (1940) 16 Cal.2d 779, 787 [108 P.2d 430], the Supreme Court explained: " 'Regulations of great businesses affected with a public interest touching every institution, every activity, every home and every person in the state must be uniform, and must be free from the local judgment and prejudice. Then too, many of these utilities reached into other communities, and uniformity of regulation by all these communities would be an unlooked for result. . . . None of these great interests would be served if each community retained the power of making such police regulations as each might deem proper. . . . Neither the public nor the service corporation could tolerate as many standards and policies as there were towns, cities, or boroughs through which they operated. . . . Over regulations not exclusively local, those affecting the business as a whole, or affecting the public as a whole, and those which the nature of the business and the character of the regulation require should be under the single agency of the state, are by our act committed to the exclusive jurisdiction of the Public Utilities Commission.' "[2]

Vernon acknowledges the constitutional provision cited above but asserts "[the Gas Company] does not offer any statute which purports to demonstrate that the Legislature has granted regulatory control to the [PUC] concerning the proper depth and location of pipelines installed in city streets."

Our independent research discloses the Legislature has granted broad regulatory powers to the PUC. Public Utilities Code section 701 states: "The

---

[2]*Los Angeles Ry. Corp.* v. *Los Angeles, supra,* 16 Cal.2d at pages 780-788, held the City of Los Angeles could not enforce an ordinance requiring crews of at least two persons on all streetcars in the city, in that the Railroad Commission had issued an order authorizing operation of streetcars by one person.

commission may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction."

Further, Public Utilities Code section 768 specifically addresses the PUC's regulatory power with respect to safety matters, stating: "The commission may, after a hearing, require every public utility to construct, maintain, and operate its line, plant, system, equipment, apparatus, tracks, and premises in a manner so as to promote and safeguard the health and safety of its employees, passengers, customers, and the public. . . . The commission may establish uniform or other standards of construction and equipment, and require the performance of any other act which the health or safety of its employees, passengers, customers, or the public may demand."

Consistent therewith, the PUC has promulgated General Order No. 112-D,[3] "to establish minimum requirements for the design, construction, quality of materials, location, testing, operations and maintenance of facilities used in the gathering, transmission and distribution of gas . . . and in liquefied natural gas facilities . . . to safeguard life or limb, health, property and public welfare and to provide that adequate service will be maintained by gas utilities operating under the jurisdiction of the commission." (Gen. Order No. 112-D, § 102.1.) These rules "are concerned with safety of the general public and employees' safety to the extent they are affected by basic design, quality of the materials and workmanship, and requirements for testing and maintenance of gas gathering, transmission and distribution facilities . . . and liquefied natural gas facilities . . . ." (Gen. Order No. 112-D, § 102.2.)

Although Vernon objects to the proposed pipeline on the grounds, inter alia, the depth is insufficient and the proposed pipeline would interfere with other pipelines, General Order No. 112-D addresses those matters. Section 192.327 thereof requires buried transmission lines to be installed with a minimum cover of 18 to 36 inches, depending on the type of location and whether the installation is in normal soil or consolidated rock. As for underground clearance, section 192.325(a) of General Order No. 112-D provides "[e]ach transmission line must be installed with at least 12 inches of clearance from any other underground structure not associated with the transmission line."

Further, section 141.2 of General Order No. 112-D provides that in specified cases, at least 30 days prior to the construction of a new pipeline or

---

[3]At the request of the Gas Company, we have taken judicial notice of the PUC's General Order No. 112-D.

the reconstruction or reconditioning of an existing pipeline, a report shall be filed with the PUC setting forth the proposed route and specifications for such pipeline.

In sum, under the Constitution a city may not regulate matters over which the PUC has been granted regulatory power, the Legislature has granted regulatory power to the PUC over the safety of gas pipelines, and the PUC in fact has promulgated rules on this subject. Therefore, Vernon cannot purport to regulate the design or construction of the proposed pipeline under the guise of ensuring the pipeline's safety.

The goal of statewide uniformity in this area would be defeated if a municipality such as Vernon could enlarge upon the standards promulgated by the PUC in its General Order. If Vernon believes the PUC's standards are inadequate, it should direct its concerns to that entity.

*Vernon's reliance on Public Utilities Code section 2902 is unavailing.*

Vernon contends Public Utilities Code section 2902 specifically excludes from PUC jurisdiction matters such as location of mains of any public utility, on, under, or above such streets. (See also Pub. Util. Code, § 2906.)

Vernon's reliance on the statute is misplaced. Section 2902, found within a chapter of the Public Utilities Code pertaining to surrender of control by municipal corporations to the PUC, states: "This chapter shall not be construed to authorize any municipal corporation to surrender to the commission its powers of control to supervise and regulate the relationship between a public utility and the general public in matters affecting the health, convenience, and safety of the general public, including matters such as the use and repair of public streets by any public utility, *the location of the poles, wires, mains, or conduits of any public utility, on, under, or above any public streets*, and the speed of common carriers operating within the limits of the municipal corporation." (Pub. Util. Code, § 2902, italics added.)

This statute does not confer any powers upon a municipal corporation but merely states that certain existing municipal powers are retained by the municipality. The language of Public Utilities Code section 2902 simply reflects that the *location* of pipelines beneath city streets, along with matters involving the flow of traffic and the use and repair of public streets, are

matters for the municipal corporation, not the PUC. [4] However, viewing this statute in the context of the related constitutional and statutory provisions discussed above (see *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]), we conclude the design and construction of the proposed pipeline are matters within the regulatory purview of the PUC, not the municipality.

2. *Under the terms of the franchise, the Gas Company is entitled to issuance of a permit.*

a. *General principles.*

■ "A franchise, whether it be owned by a private utility or a public agency, is property. A franchise to lay pipes or conduits in a street is real property in the nature of an easement. [Citations.] . . . [A] private utility's franchise in a public street is property created by contract[.]" (*Northeast Sacramento etc. Dist.* v. *Northridge Park etc. Dist.* (1966) 247 Cal.App.2d 317, 322 [55 Cal.Rptr. 494].)

b. *Grounds available to Vernon under the franchise for disapproval of the Gas Company's application for encroachment permit.*

■ Section 9(c) of the franchise sets forth the possible grounds for refusal of an encroachment permit, providing: "If the proposed location of any plant, pipes, appurtenances, facilities or equipment, does not, or will not interfere unreasonably with the ordinary travel or the use of the streets of the City, and otherwise complies with this franchise, and all city ordinances, the Engineer shall approve the same, and issue a permit or permits therefor."

Thus, Vernon was entitled under the franchise to reject an application by the Gas Company on the following three grounds: (1) the proposed location of the pipeline unreasonably interfered with travel or use of the streets; (2) the proposed location violated the franchise; or (3) the proposed location violated a municipal ordinance.

As discussed below, the Gas Company was entitled to issuance of the permit *as a matter of law* because Vernon did not object to the application on any of the grounds available to it under the franchise.

---

[4]Consistent with Public Utilities Code section 2902, which reflects the location of a pipeline is a matter for the municipality, the instant franchise at section 9(c) states: "If the proposed location of any plant, pipes, appurtenances, *facilities or equipment, does not, or will not interfere unreasonably with the ordinary travel or the use of the streets of the City,* . . . , the Engineer shall approve the same, and issue a permit or permits therefor." (Italics added.)

*c. The record discloses Vernon did not object to the location of the pipeline on the ground it would interfere with traffic or safety of the streets or would violate the franchise or a municipal ordinance.*

The decision of the Vernon City Council to reject the Gas Company's application was based on three grounds: The "application and required drawings were deficient and incomplete." In addition, the Gas Company's proposed pipeline conflicted with that of the Water District. Lastly, the franchise had been rescinded.

Because the Water District has abandoned its proposal and as discussed below, the purported rescission was invalid, the sole ground before us is whether Vernon properly denied the application on the ground it was deficient and incomplete.

The record reflects the Gas Company filed drawings with Vaits, the city official responsible for issuing the permit, for the Alcoa Avenue route on March 9, 1992, and for the Downey Road route on May 28, 1992. Further, the Gas Company filed its permit application for the Alcoa Avenue and Downey Road routes on May 11, 1992, and May 28, 1992, respectively.

With respect to the adequacy of those submissions, the city council made 17 findings of fact. However, scrutiny of the city council's findings and decision reveals Vernon did not find the location of the proposed pipeline would interfere with travel or use of the streets, or that the proposed location violated the franchise or a municipal ordinance. Instead, the design "deficiencies" identified by Vernon pertained to matters outside its purview, such as pipeline depth and proximity to existing lines.

Because Vernon did not object to the proposed pipeline on the limited grounds available to it under section 9(c) of the franchise, pursuant to the terms of the franchise the Gas Company was entitled to the issuance of a permit.

*3. The trial court properly held Vernon's purported rescission of the franchise is ineffective.*

Preliminarily, we note Vernon sought forfeiture of the franchise by way of a cross-complaint against the Gas Company in the mandate

proceeding.[5] On March 21, 1994, the trial court granted judgment for the Gas Company on the cross-complaint, ruling "[t]he claim for forfeiture or rescission must fail because the cross-complainant has made no showing that [the Gas Company] has failed to comply with the provisions of the franchise agreement. [The Gas Company] has breached no duty to perform."

Nonetheless, Vernon contends it properly rescinded the franchise pursuant to a November 10, 1992 notice of rescission, which was adopted pursuant to a city council resolution. The argument fails.

The remedy of a municipality for noncompliance by the franchisee is forfeiture. (See *Arcata* v. *Arcata & M. R. R. Co.* (1892) 92 Cal. 639, 647 [28 P. 676].) The controlling statute, Public Utilities Code section 6291 provides: "*If the grantee of any franchise granted under this chapter fails, neglects or refuses to comply* with any of the provisions or conditions prescribed in this chapter, and does not within ten (10) days after written demand for compliance begin the work of compliance, or after such beginning does not prosecute the work with due diligence to completion, the municipality, by its legislative body, may declare the franchise forfeited." (Italics added.)

In view of the trial court's ruling on the cross-complaint that the Gas Company had complied with the franchise, Vernon's resolution asserting noncompliance by the Gas Company is unsupported.[6]

Moreover, leaving aside the trial court's finding the Gas Company is in compliance with the terms of the franchise, it is well settled that "statutes which provide for a forfeiture must be strictly construed." (*Oddo* v. *Hedde* (1950) 101 Cal.App.2d 375, 383 [225 P.2d 929].) Public Utilities Code section 6291 requires the municipality to make a written demand upon the grantee at least 10 days prior to declaring a forfeiture. There is no showing Vernon made such a demand here.

For these reasons, Vernon's notice of rescission was ineffective.

4. *No statement of decision was required.*

Vernon contends the "statement of decision" issued by the trial court was insufficient to explain the factual and legal basis for its decision. The argument is unavailing.

"It is axiomatic that a statement of decision is required only as to issues of fact decided by the trial court ([Code Civ. Proc.,] § 632: 'upon trial of a

---

[5]Public Utilities Code section 6292 states: "Any municipality may sue in its own name for the forfeiture of any franchise granted pursuant to this chapter, in the event of noncompliance with any of the conditions thereof by the grantee[.]"

[6]Vernon advises this court it has appealed the judgment on the cross-complaint.

question of fact by the court'), not as to issues of law." (*City of Coachella* v. *Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1291-1292 [258 Cal.Rptr. 795].)

In ruling on the Gas Company's petition, the trial court was not adjudicating questions of fact. Instead, the role of the trial court was to sit as a reviewing court, scrutinizing the decision of the Vernon City Council. ██ Where "the only issue in a proceeding is whether the administrative decision is supported by substantial evidence in the light of the whole record or whether there has been an abuse of discretion, findings are not essential to effective appellate review of the decision of the trial court. In such cases, the issue being essentially one of law, findings are not required." (*Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 518 [113 Cal.Rptr. 539].)

### 5. *Unnecessary to address whether trial court improperly received new evidence.*

Vernon contends the trial court committed prejudicial error in receiving new evidence in the form of a supplemental declaration by David Carroll, a project superintendent for the Gas Company. The Carroll declaration addressed the city council's findings the Gas Company's plans were deficient and incomplete. However, it is unnecessary to resolve whether the trial court prejudicially erred in receiving the Carroll declaration.

As discussed above, the PUC has exclusive jurisdiction to regulate pipeline safety, Further, Vernon failed to object to the proposed pipeline on any of the grounds available to it under section 9(c) of the franchise, and the purported rescission was ineffective. Therefore, irrespective of the Carroll declaration, the Gas Company was entitled to judgment as a matter of law.

### 6. *No merit to Vernon's contention remand is the appropriate disposition.*

Lastly, Vernon contends the trial court erred in directing issuance of an encroachment permit and that the matter should have been remanded to the Vernon City Council. The argument does not detain us. Given this record, there was no need for any further proceedings at the administrative level. Because the PUC has exclusive jurisdiction in the matter of pipeline safety and Vernon did not object on any of the grounds set forth in section 9(c) of the franchise, the trial court properly directed issuance of a permit to the Gas Company.

## DISPOSITION

The judgment is affirmed. The Gas Company to recover respective costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied January 18, 1996, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied March 21, 1996.