[No. B128002. Second Dist., Div. Six. July 29, 1999.]

ROBERT G. LESLIE et al., Petitioners, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
SOUTHERN CALIFORNIA EDISON COMPANY, Real Party in Interest.

**COUNSEL**

England, Whitfield, Schroeder & Tredway, David W. Tredway and Madison M. Christian for Petitioners. Robert G. Leslie and Marilyn B. Leslie.

James L. McBride, County Counsel, and Noel A. Klebaum, Assistant County Counsel, for County of Ventura as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Benton, Orr, Duval & Buckingham, James T. Sherren and Mark S. Borrell for Real Party in Interest.

Luce, Forward, Hamilton & Scripps and Jeffrey A. Chine for Pacific Gas and Electric and San Diego Gas and Electric as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**GILBERT, Acting P. J.**—A public utility has an easement over property to maintain its electric transmission lines. The building code of the county in which the property is located adopts the State Housing Law standards for grading and excavation. The landowner and the public utility have a legal dispute over grading of the easement. Here we hold the superior court has jurisdiction to decide the case.

Petitioners Robert G. Leslie and Marilyn B. Leslie (the Leslies) filed a complaint in the Ventura County Superior Court alleging that real party in interest Southern California Edison Company (SCE) violated the Ventura County Building Code in grading and maintaining dirt access roads on their property. SCE demurred on the ground that the case comes within the exclusive jurisdiction of the Public Utilities Commission (PUC).

We grant the Leslies' petition for a writ of mandate to compel the superior court to vacate its order sustaining the demurrer. We conclude the PUC does not have jurisdiction here.

### FACTS

The Leslies own approximately 1,795 acres (the property) in Ventura County (County). An agreement gives SCE an easement to maintain three sets of high-voltage transmission lines across the property and to maintain three and one-half miles of dirt access roads. The agreement permits SCE "to construct, maintain, operate, alter, add to, inspect, replace, repair and remove electric transmission lines, and associated structures for the purpose of transmitting, distributing, regulating, using and controlling electric energy." It also requires SCE to keep the roads "in good repair and condition."

The Leslies assert that SCE created large, unstable vertical cut slopes and uncompacted fill slopes that damaged their property. The Leslies asked SCE to properly construct, repair and maintain the roads so as to avoid erosion. SCE refused to do so.

The Leslies filed suit alleging, among other things, that SCE caused erosion, flooding and subsidence damages to the property through its negligent maintenance and alteration of roads, watercourses and drainage. They sought to enjoin SCE from trespassing and to obtain compensatory damages.

County issued a notice of unauthorized grading to the Leslies in violation of the County Building Code. The Leslies demanded that SCE correct the

violations that might subject them to criminal penalties. Again SCE refused to do so.

The Leslies filed the instant supplemental complaint against SCE for violating the State Housing Law (Health & Saf. Code, § 17910 et seq.) relating to grading and drainage as incorporated in the County Building Code.

The superior court sustained SCE's demurrer to the supplemental complaint without leave to amend on the grounds that the PUC has exclusive jurisdiction over the matter, and that the County Building Code sets forth only local law unenforceable against SCE. The trial court ruled that County is not enforcing state law.

The issues before us are of concern to residential property owners, local government entities and the public utilities industry. We have therefore issued an alternative writ of mandate. (*San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 912-913 [55 Cal.Rptr.2d 724, 920 P.2d 669]; *Campbell* v. *Superior Court* (1996) 44 Cal.App.4th 1308, 1314-1315 [52 Cal.Rptr.2d 385]; *Omaha Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1266, 1273-1274 [258 Cal.Rptr. 66].)

## DISCUSSION

We must decide whether the PUC has preempted the field of grading and maintaining access roads within easements granted to public utilities. ▮ Counties may not make and enforce laws conflicting with general state laws. (Cal. Const., art. XI, § 7; *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876]; *Water Quality Assn.* v. *County of Santa Barbara* (1996) 44 Cal.App.4th 732, 741 [52 Cal.Rptr.2d 184].) The powers granted the PUC, including its rules and regulations, constitute general state laws. (Cal. Const., art. XII, § 8; *San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at pp. 914-915.) Accordingly, counties may not enforce local regulations that conflict with rules and regulations of the PUC. (Cal. Const., art. XII, § 8; *Sherwin-Williams Co., supra,* at p. 897; *Water Quality Assn., supra,* at p. 741; *Southern Cal. Gas Co.* v. *City of Vernon* (1995) 41 Cal.App.4th 209, 215 [48 Cal.Rptr.2d 661].)

▮ A conflict exists if an ordinance " " " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4

Cal.4th at p. 897.) Local legislation duplicates general law when it is coextensive with it. (*Id.*, at pp. 897-898.) Local legislation contradicts general law when it is inimical to it. For example, a local law purporting to fix a lower maximum speed limit for motor vehicles than stated by general state law is preempted by the state law. (*Id.*, at p. 898.)

Local legislation improperly enters an area fully occupied by general state law when the Legislature has expressly stated its intent to fully occupy the area or when the state law impliedly has fully covered the field. (*Sherwin-Williams Co.* v. *City of Los Angeles, supra*, 4 Cal.4th at p. 898.) Preemption by implication occurs only when: " '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the locality . . . .' " (*Ibid.*)

■ State law governs the power of the PUC.[1] ■ SCE argues that the grant of power to the PUC to construct and maintain its "premises" and to repair or improve "facilities" constitutes an express grant of power to grade and maintain access roads.[2] We disagree.

■ It is true the PUC has " 'far-reaching duties, functions and powers' " and is liberally authorized to " 'do all things . . . in addition [to the expressly enumerated powers] which are necessary and convenient' in the exercise of its jurisdiction over public utilities." (*San Diego Gas & Electric Co.* v. *Superior Court, supra*, 13 Cal.4th at pp. 914, 915, italics omitted.)

---

[1]"The [PUC] may supervise and regulate every public utility in the State and may do all things, whether specifically designated in this part or in addition thereto, which are necessary and convenient in the exercise of such power and jurisdiction." (Pub. Util. Code, § 701.)

[2]"The [PUC] may . . . require every public utility to construct, maintain, and operate its line, plant, system, equipment, apparatus, tracks, and premises in a manner so as to promote and safeguard the health and safety of its employees, passengers, customers, and the public. . . . The [PUC] may establish uniform or other standards of construction and equipment, and require the performance of any other act which the health or safety of its employees, passengers, customers, or the public may demand." (Pub. Util. Code, § 768.)

"Whenever the [PUC] . . . finds that additions, extensions, repairs, or improvements to, or changes in, the existing plant, equipment, apparatus, facilities, or other physical property of any public utility . . . ought reasonably to be made, or that new structures should be erected, to promote the security or convenience of its employees or the public, or in any other way to secure adequate service or facilities, the [PUC] shall make and serve an order directing that such . . . be made . . . ." (Pub. Util. Code, § 762.)

But the PUC has not promulgated rules concerning the construction, maintenance or grading of access roads. Nor has it purported to exercise its authority over such matters. There is, however, state law governing the subject which the state requires County to adopt.

The State Housing Law expressly requires cities and counties to adopt its minimum building standards, including those regarding grading and excavation. (Health & Saf. Code, §§ 17910 et seq., 17922, 17958; *Baum Electric Co. v. City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577 [109 Cal.Rptr. 260].) Cities and counties are required to adopt the Uniform Building Code (UBC) and the California Building Standards Code (CBSC), except that they may "make such changes or modifications in the requirements [of the CBSC] . . . as it determines . . . are reasonably necessary because of local climatic, geological, or topographical conditions." (Health & Saf. Code, §§ 17958, 17958.5; Gov. Code, §§ 50022.1 et seq.)[3]

"[O]ur state Legislature has clearly expressed its intent to fully occupy the field of building standards. Consequently, a local government is precluded from enacting building standards that differ from state standards unless a state statute specifically authorizes the local government to do so." (*Building Industry Assn. v. City of Livermore* (1996) 45 Cal.App.4th 719, 724 [52 Cal.Rptr.2d 902].)

County adopted its building code ordinance, which regulates excavation and grading for roads, pursuant to and in conformity with the State Housing Law. Pursuant to Health and Safety Code section 17958.5, County adopted a few, minor additions to the UBC in recognition of unique topographical, geological and climatic conditions. Of the 14 County ordinances allegedly violated by SCE, only 3 differ from the UBC. They deal with grading and drainage on slopes and have no application here.

The County Building Code therefore is not a purely local scheme because it incorporates the comprehensive State Housing Law that speaks to grading and excavation of roads. (*Baum Electric Co. v. City of Huntington Beach, supra,* 33 Cal.App.3d at p. 577.) These statewide standards, adopted by local agencies, are binding on both public agencies and private entities. (Health & Saf. Code, § 18944.5.) The Ventura County Public Works Agency therefore may enforce the grading standards in the County Building Code against SCE.

---

[3]Health and Safety Code section 17922, subdivision (a)(2), states, in pertinent part, "Except *as otherwise specifically provided by law, the building standards adopted . . . by the* department . . . which are contained in Title 24 of the California Administrative Code, . . . shall be adopted by reference . . . . The building standards . . . shall impose substantially the same requirements as are contained in . . . . [¶] [t]he Uniform Building Code of the International Conference of Building Officials [UBC]."

The State Housing Law and PUC rules and regulations are of equal dignity. Where there are conflicts between such statutory schemes, we must "determine whether . . . there is any possible construction that will harmonize [the] two." (*Conway* v. *City of Imperial Beach* (1997) 52 Cal.App.4th 78, 84-85 [60 Cal.Rptr.2d 402].) But here there is no conflict because the PUC has not generated rules or regulations on the subject at issue.

Even if County had not adopted the UBC and CBSC in its code, the standards set by these uniform codes would automatically apply to County pursuant to Health and Safety Code section 17958. Thus the County Building Code is not in conflict with general state law and does not constitute a purely local law. Allegedly, SCE has not complied with any of the standards regarding road construction, maintenance or grading, including the minimum statewide standards uniformly required by state law. The State Housing Law is of equal dignity to regulations of the PUC. Therefore, the PUC is not exempt from the statewide standards governing grading and maintenance of roads.

This principle finds support in *Orange County Air Pollution Control Dist.* v. *Public Util. Com.* (1971) 4 Cal.3d 945 [95 Cal.Rptr. 17, 484 P.2d 1361]. Southern California Edison Company (Edison) sought to construct and operate new generating units. Although the PUC granted Edison's application and directed it to begin construction, the Orange County Air Pollution Control District (OCAPCD) denied Edison a permit for the project because Edison had not demonstrated that the generating units would not violate state health codes as applied by local rules.

The PUC did not deny OCAPCD's findings, but concluded that its jurisdiction to decide whether the units could be built was paramount or exclusive, superseding conflicting local laws and decisions. Our Supreme Court disagreed and determined that the PUC must share its jurisdiction where it is concurrent with another comprehensive, statutory scheme. The court concluded that where a nonlocal air pollution control district (APCD) charged with enforcement of state law has found that a proposed PUC facility does not comply with applicable APCD regulations, the PUC may not order the utility to violate the APCD's ruling. (*Orange County Air Pollution Control Dist.* v. *Public Util. Com.*, *supra*, 4 Cal.3d at pp. 953-954.)

SCE's reliance upon *Southern Cal. Gas Co.* v. *City of Vernon*, *supra*, 41 Cal.App.4th 209 is misplaced. Southern California Gas Company (SCG) sought an encroachment permit from Vernon to install pipes beneath city streets. Vernon denied the permit because the request did not comply with city design and construction regulations. The trial court granted SCG's petition for writ of mandate.

In affirming the trial court's decision, the Court of Appeal explained that Vernon had no authority to regulate the matter because the PUC had issued a general order setting forth specific rules regarding installation of gas lines, pursuant to Public Utilities Code sections 701 and 768. (*Southern Cal. Gas Co.* v. *City of Vernon, supra,* 41 Cal.App.4th at pp. 216-217.) Here there are no specific, conflicting PUC rules or regulations concerning grading of access roads. Moreover, *Vernon,* unlike this case, concerns a strictly local ordinance and not state mandated building codes.

In *San Diego Gas & Electric Co.* v. *City of Carlsbad* (1998) 64 Cal.App.4th 785 [75 Cal.Rptr.2d 534] (*Carlsbad*), the appellate court upheld exclusive power of San Diego Gas and Electric Company (SDG&E) to dispose of sand dredged from a lagoon next to its power plant, even in the absence of a specific PUC regulation allowing such disposal.

*Carlsbad* broadly construes the power of the PUC. But it is distinguishable from the instant case. SDG&E obtained a special use permit from the City of Carlsbad to dredge a lagoon to cool its generating units. Carlsbad required use permits due to its local coastal zone plan, approved by the California Coastal Commission (CCC).

Carlsbad ordered SDG&E to deposit lagoon dredge spoils in a particular place. SDG&E ignored the order and dumped the spoils elsewhere. Carlsbad issued a stop notice, and SDG&E sought declaratory relief challenging Carlsbad's jurisdiction over the matter.

The trial court granted relief and Carlsbad appealed. The appellate court acknowledged that the PUC had not expressly preempted Carlsbad's regulation and that implied preemption is discouraged where potentially conflicting provisions can be harmonized. (*Carlsbad, supra,* 64 Cal.App.4th at pp. 793, 802.) Nonetheless, it determined that Carlsbad's coastal regulations impermissibly invaded a field significantly and fully occupied by the PUC's exclusive regulatory authority.

The court relied on a PUC decision broadly proclaiming its authority to exercise exclusive jurisdiction over "[a]ll utility-owned electric transmission lines, power lines, distribution lines, substations, and facilities." (*Re Rules, Procedures and Practices Applicable to Transmission Lines Not Exceeding 200 Kilovolts* (1994) 55 Cal.P.U.C.2d 87, 112.)

*Carlsbad* concluded that "[t]he essential maintenance activity of dredging cannot be performed unless the spoils of dredging can be deposited some-where, and City has not shown that its local police power interest in

protecting in a particular manner the state beaches within its boundaries is necessarily compatible with the statewide interest in ensuring that utility operations are conducted in a safe and efficient manner." (*Carlsbad, supra,* 64 Cal.App.4th at p. 802, citing *Southern Cal. Gas Co.* v. *City of Vernon, supra,* 41 Cal.App.4th at p. 217.)

*Carlsbad* determined that the PUC had extensive powers. But apparently the court was wary of its own ruling because it stated, "This record does not present the abstract question of whether a local entity may regulate, within its jurisdiction, the disposal of dredging spoils taken in the operation of a public utility, *and we express no opinion on that subject.*" (*Carlsbad, supra,* 64 Cal.App.4th at p. 803, fn. 8, italics added.)

In any event, the instant case differs significantly from *Carlsbad*. Here the state requires County to adopt the UBC in toto. *Carlsbad*, on the other hand, involves the Coastal Act, which only "sets minimum standards and policies with which local governments . . . must comply; it does not mandate the action to be taken by a local government in implementing local land use controls." (*Yost* v. *Thomas* (1984) 36 Cal.3d 561, 572-573 [205 Cal.Rptr. 801, 685 P.2d 1152].)

Furthermore, the CCC conducts only limited administrative review to ascertain whether the local plan conforms to minimal requirements of the California Coastal Act. (Pub. Resources Code, § 30512.2, subds. (a) & (b).) The CCC "is not authorized . . . to diminish or abridge the authority of a local government to adopt and establish, by ordinance, the precise content of its land use plan." (*Id.*, subd. (a).)

Under the California Coastal Act, "a city or county . . . [may] adopt and enforce additional regulations, not in conflict with [the] act, imposing further conditions, restrictions, or limitations with respect to any land or water use or other activity which might adversely affect the resources of the coastal zone." (Pub. Resources Code, § 30005.) Unlike the mandatory statewide building code requirements, the California Coastal Act "leaves wide discretion to . . . local government not only to determine the contents of its land use plans, but to choose how to implement these plans." (*Yost* v. *Thomas, supra,* 36 Cal.3d at p. 573.)

Moreover, our Supreme Court has cautioned that " '[i]t has never been the rule in California that the [PUC] has exclusive jurisdiction over any and all matters having any reference to the regulation and supervision of public utilities.' " (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 944.)

SCE notes that where grading is "in an isolated, self-contained area," the County Building Code provides an exemption from permitting requirements, "if there is no danger to private or public property." (County Bldg. Code, § 3306.2, subd. 1.) SCE argues that the PUC preempts County's ordinance because this exception is not subject to uniform statewide application and is likely to create conflicts with other counties and cities. We are not persuaded.

Although the exception dispenses with obtaining a permit, it does not relieve the builder from complying with the uniform statewide building law. The County Building Code states, "Exemption from the permit requirements of this chapter shall not be deemed to grant authorization for any work to be done in any manner in violation of the provisions of this chapter or any other laws or ordinances of this jurisdiction." (County Bldg. Code, § 3306.2.)

SCE argues that the Uniform Building Code does not apply to the PUC because UBC section 101.3 excepts from its application excavation for wells, tunnels and public utility towers and poles. Again, the argument is not persuasive.

By its terms, this narrow exception does not involve the grading of dirt access roads. Nor does it indicate an intent to exempt public utilities entirely from the requirements of the UBC. UBC section 101.3 merely mimics Public Utilities Code sections 701 and 768, and excepts the construction and maintenance of utility towers and poles from the purview of the building code. If the state Legislature had intended to exempt public utilities under all circumstances from all requirements of the UBC, it would have done so.

By enacting the uniform statewide building law and mandating that local government adopt the UBC and the CBSC, the Legislature has shown its intent to preempt local governments from legislating on the subject, except as narrowly permitted under Health and Safety Code section 17958.5. (*Building Industry Assn.* v. *City of Livermore, supra,* 45 Cal.App.4th at p. 726.) Local governments must adopt the statewide UBC and the CBSC pursuant to state law. They do not enact building codes pursuant to the constitutional grant of police powers. (*Ibid.*)

 SCE raises the specter of having to comply with a "checkerboard" of disparate building code rules and regulations enacted by local agencies throughout the state. We disagree. Compliance with the UBC and the CBSC is mandated throughout the state regardless of whether local agencies have adopted it or not. The PUC has not promulgated rules or regulations governing the grading of dirt access roads. If County had not adopted the UBC,

the PUC would still be subject to the minimum standards set by the state building code, except as the Legislature has otherwise specifically provided.

Let a peremptory writ of mandate issue directing the trial court to vacate its order sustaining the demurrer to the supplemental complaint and to enter a new order overruling the demurrer. The alternative writ of mandate is discharged.

Costs are awarded to the Leslies.

Yegan, J., and Coffee, J., concurred.

A petition for a rehearing was denied August 25, 1999. The petition of real party in interest for review by the Supreme Court was denied October 27, 1999. Kennard, J., and Brown, J., were of the opinion that the petition should be granted.