[No. B089470. Second Dist., Div. Six. Apr. 17, 1996.]

WATER QUALITY ASSOCIATION et al., Plaintiffs and Respondents, v. COUNTY OF SANTA BARBARA et al., Defendants and Appellants.

[No. B090201. Second Dist., Div. Six. Apr. 17, 1996.]

WATER QUALITY ASSOCIATION et al., Plaintiffs and Respondents, v. CITY OF SANTA MARIA et al., Defendants and Appellants.

734

**COUNSEL**

Stephan Shane Stark, County Counsel, and Clare H. MacDonald, Deputy County Counsel, for Defendants and Appellants in No. B089470.

Brown, Diven & Hentschke, Daniel S. Hentschke, Celia A. Brewer and Martha H. Lennihan as Amici Curiae on behalf of Defendants and Appellants in No. B089470.

Arthur Montandon, City Attorney, for Defendants and Appellants in No. B090201.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Charles W. Getz IV, Assistant Attorney General, Randall B. Christison and Carol A. Squire, Deputy Attorneys General, Weissburg and Aronson and Gregory V. Moser as Amici Curiae on behalf of Defendants and Appellants in No. B090201.

Keck, Mahin & Cate, Stephen M. Levine, Rubinstein & Perry and Lyman D. Bedford for Plaintiffs and Respondents.

Robert A. Merring, Gibson, Dunn & Crutcher, Gail E. Lees, Ralph I. Hubley III and Marilyn Ruth Riley as Amici Curiae on behalf of Plaintiffs and Respondents.

## Opinion

**GILBERT, J.**—A state statutory scheme regulates the types of water softening appliances consumers may use.

May local entities enact ordinances which prohibit water softeners permitted by the state statute? No, they are preempted by the state statute.

The City of Santa Maria (City), and the Laguna County Sanitation District et al. (District), appeal from the judgment of the trial court in favor of respondents, the Water Quality Association (WQA). The judgment declared certain aspects of the ordinances void because they conflict with the state statute. We affirm the judgment.

### Facts

In 1978, the state Legislature enacted a statutory scheme entitled water softening or conditioning. (Health & Saf. Code, § 116775 et seq. [formerly § 4045 et seq.], the Act.)[1] Section 116775 reads, in pertinent part, as follows: "The Legislature hereby finds and declares that the *utilization of the waters of the state by residential consumers* for general domestic purposes, . . . *is a right* that should be interfered with only when necessary for specified health and safety purposes. The Legislature further finds that *variation* in water quality, and *particularly in water hardness, throughout the state requires that on-site water softening* or conditioning *be available throughout the state* to insure to domestic consumers their right to a water supply that is effective and functional for domestic requirements of the residential household, *but that the on-site water softening or conditioning shall be available only as hereinafter set forth.*" (Italics added.)

Section 116785 (formerly § 4047) of the Act, states in pertinent part, that "[n]o residential water softening or conditioning appliance shall be installed except in either of the following circumstances:

"(a) The regeneration of the appliance is performed at a nonresidential facility . . . .

"(b) The regeneration of the appliance discharges to the waste disposal system of the residence where the appliance is used and both of the following conditions are satisfied:

---

[1] All further statutory reference will be to the Health and Safety Code unless otherwise noted.

"(1) The appliance is certified to control the quantity of salt used per regeneration by a pre-set device and the settings of such device are limited so that a *salt efficiency rating of no less than 2850 grains of hardness removed* per pound of salt used in regeneration is achieved *with a clock control, manually-initiated control, or demand control.*

"(2) The installation of the appliance is accompanied by the simultaneous installation of the following . . . water conservation devices on all fixtures . . . . [¶] (A) Faucet flow restrictors. . . ."

Section 116790 (formerly § 4048) states, in pertinent part, that "[a]ny water softening appliance in place at a residential dwelling prior to January 1, 1980, . . . for which the . . . regional water quality control board makes a finding, . . . that the control of residential salinity input is necessary to provide compliance with . . . limitations, may be continued in operation for a period no longer than four years . . . . After the four-year period has elapsed, any water softening appliance at that site shall be set at a salt efficiency rating of no less than 2850 grains of hardness removed per pound of salt used in regeneration when regeneration is initiated with clock controls or manually-initiated controls, or shall have regenerations initiated with demand devices. . . ."

On March 17, 1992, the City adopted ordinance No. 92-4 (City's ordinance). The City's ordinance sets a minimum salt efficiency rating for water softeners of 3,350 grains of hardness removed per pound of salt applied. It makes unlawful the installation of on-site regeneration water softeners which are not demand controlled and which do not meet the 3,350 rating. It also made illegal the operation or maintenance of water softeners which do not meet the 3,350 rating and which are not demand controlled after January 1, 1995. It makes unlawful the installation of on-site water softeners after the effective date of the ordinance unless existing on-site regeneration water softeners are retrofitted or replaced with ones meeting the 3,350 rating and using demand control.

The City's ordinance places further restrictions on new residences. It permits only canister type units which are regenerated off-site or softeners which will not discharge brine waste, except for central laundry facilities of multifamily structures. For such multifamily installations, the ordinance requires that any on-site regenerated softener have demand control at the 3,350 rating.

It permits the City's director of public works to order unlawful the installation of any on-site regeneration water softener where the concentration of total dissolved solids (TDS) exceeds a city-set threshold which is less

than that established by the regional water quality control board (RWQCB). By order of the public works director, any on-site regeneration softener would be unlawful after January 1, 2007.

On November 10, 1992, the Board of Supervisors of the County of Santa Barbara, acting as the board of directors for the District, adopted ordinance No. 4074 (County's ordinance). The County's ordinance made unlawful the discharge of brine waste into the sewer system from the regeneration of any water softening system or device in any discretionary development project approved after May 1, 1990. It made unlawful such discharge of any waste whose samples contain specified amounts of sodium, chlorine or TDS.

The County's ordinance made unlawful the installation of any water softening system or device which discharged brine waste except to an authorized off-site facility. It also outlawed use of water softening systems activated by timing mechanisms, after December 31, 1996, unless the discharge goes to an authorized off-site facility. After January 1, 2000, the County's ordinance makes unlawful the use or maintenance of any water softening system or device unless the discharge therefrom goes to an authorized off-site facility.

The WQA, a trade organization, and others sued the City and the county challenging the validity of their respective ordinances. Among other things, the suits sought declarations that the ordinances are preempted by state law and injunctions to prohibit enforcement thereof. The trial court determined that parts of these ordinances are preempted by the Act. This consolidated appeal ensued from the judgments in these two actions commenced in the trial court.

### DISCUSSION

Are these ordinances preempted by the Act? ▮ Interpretation of legislation presents questions of law which we review de novo. (*Jones* v. *California Interscholastic Federation* (1988) 197 Cal.App.3d 751, 756 [243 Cal.Rptr. 271].) ▮ We determine the intent of the Act so as to effectuate its purpose. (*California School Employees Assn.* v. *Governing Board* (1994) 8 Cal.4th 333, 338 [33 Cal.Rptr.2d 109, 878 P.2d 1321]; *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) We construe the Act as a whole and consider all its words according to their usual commonsense meaning. (*Select Base Materials*, *supra*, 51 Cal.2d at p. 645.)

▮ We presume the validity of local ordinances. (*Sonoma County Organization etc. Employees* v. *County of Sonoma* (1991) 1 Cal.App.4th 267,

275-276 [1 Cal.Rptr.2d 850]; see also *Calfarm Ins. Co.* v. *Deukmejian* (1989) 48 Cal.3d 805, 814-815 [258 Cal.Rptr. 161, 771 P.2d 1247], regarding statutes.) A general law city, such the City, ". . . may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*." (Cal. Const., art. XI, § 7, italics added.) Where local legislation conflicts with general law, the local ordinance is void. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 747 [29 Cal.Rptr.2d 804, 872 P.2d 143]; *Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 290 [219 Cal.Rptr. 467, 707 P.2d 840].) The District may make and enforce within its limits only those ordinances and regulations for which it has specific powers derived from state statutes. (Gov. Code, § 56037; see *Trimont Land Co.* v. *Truckee Sanitary Dist.* (1983) 145 Cal.App.3d 330 [193 Cal.Rptr. 568].)

An otherwise valid ordinance is preempted by state statute if the ordinance duplicates or contradicts the statute, or if the ordinance enters into a field of regulation expressly or impliedly reserved to the state. (*Morehart* v. *County of Santa Barbara, supra,* 7 Cal.4th at p. 747; *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 902-906 [16 Cal.Rptr.2d 215, 844 P.2d 534]; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885-888 [218 Cal.Rptr. 303, 705 P.2d 876]; *Bravo Vending* v. *City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 396-397 [20 Cal.Rptr.2d 164].) The ultimate question concerning preemption is whether the ordinance conflicts with the state statute. (*Sherwin-Williams, supra,* at p. 902.)

The instant ordinances directly conflict with the Act. They also regulate residential water softeners which the terms of the Act implicitly preclude.

## CONFLICT WITH THE ACT

▮ The Act sets a minimum salt efficiency rating for residential softeners throughout the state of 2,850 grains of hardness per pound of salt. The City ordinance sets an efficiency rating for softeners of 3,350 grains per pound of salt. The Act permits residential water softeners with on-site regeneration, regardless of whether the 2,850-grain rating is achieved by clock, manual or demand controls. The City ordinance makes illegal the installation of on-site regeneration water softeners which do not meet its own 3,350-grain rating and which are not demand controlled.

The Act requires certain water softeners installed before January 1, 1980, to meet the regulations set forth therein within four years. The City's ordinance makes unlawful the operation or maintenance of any water softener which does not meet its own 3,350-grain rating with demand control

after January 1, 1995. Unlike the Act, the City makes illegal the installation of additional on-site water softeners unless existing on-site softeners are retrofitted or replaced by ones which meet the rating and demand control requirements set forth by the City ordinance. Unlike the Act, the City ordinance restricts water softeners in new residences to canister types regenerated off-site, or to ones which do not discharge any brine, except in multifamily buildings.

The City ordinance permits its public works director to declare illegal the installation of any on-site water softener which does not meet standards created by the City for TDS. These standards are more stringent than those established by the RWQCB. Under the City's ordinance, the public works director could order illegal any on-site regeneration softener after January 1, 2007, regardless of what standards it met. The Act expressly permits only the limitations set forth therein. By creating further restrictions, the City's ordinance directly conflicts with the limitations in the Act.

Similarly, the County's ordinance directly conflicts with the Act. The Act permits on-site water softeners which dispose of brine waste into the waste disposal system. The County's ordinance makes unlawful the discharge of brine waste by water softeners into sewers in any discretionary development project approved after May 1, 1990. The District ordinance makes unlawful residential discharge of brine waste in excess of levels of sodium, chlorine and TDS which are not proscribed by the Act.

It makes unlawful the installation of any water softener discharging brine into the ground, storm drain or sewer unless the ground discharge goes to an off-site facility. After December 1996, the ordinance outlaws use of water softeners activated by any timing mechanism, unless the discharge goes to an off-site facility. After January 1, 2000, the County's ordinance makes unlawful the use or maintenance of any water softener whatsoever unless the brine discharge goes to an off-site facility. These direct conflicts between the terms of the ordinances and the Act support the judgment of the trial court. (*Cohen* v. *Board of Supervisors, supra,* 40 Cal.3d at p. 291.)

## IMPLIED PREEMPTION

" 'In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme. There are three tests: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such

terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." ' [Citations.]" (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 423 [261 Cal.Rptr. 384, 777 P.2d 157].)

■ Because the subject matter of the Act only concerns the rights of residential consumers, we need not consider the third *Western Oil* test—the effect of the ordinances on transient citizens. We need not consider the first test because the second test applies here. The Act partially covers the subject matter of the availability and use of water softeners.

The terms of the Act indicate that the state has a paramount concern over the right of residential consumers to use water softeners of all types specified therein, provided they meet the hardness standards and conservation measures set forth therein. The Act does so by expressly stating that residential consumers have a right to use state water for efficient domestic purposes by use of water softeners throughout the state. The Act specifically delineates the types of softeners it allows and the hardness rating it permits.

Additional evidence of implied preemption is shown by an urgency amendment to the Act passed in 1980. (See generally, *Bravo Vending* v. *City of Rancho Mirage, supra,* 16 Cal.App.4th at pp. 399-400.) The amendment states that untreated water serving the outside of a residence may be carried to its hose bibs and sill cocks either by means of a bypass valve or a full-time bypass system. The amending statute explains, in pertinent part, that " '[*d*]*ifferent local agencies are interpreting the law differently, causing uncertainty for the industry and the consuming public. In some instances, it is impossible or prohibitively expensive to install a full line bypass system. Therefore, to clarify the law and to allow consumers to purchase water softening and conditioning appliances which best suit their needs and at a reasonable cost, it is necessary that this act take effect immediately.*' " (See Historical Note, 39 West's Ann. (former) Health & Saf. Code (1990 ed.) § 4047, p. 487, italics added.)

This amendment establishes that the paramount concern of the state is to permit residential consumers to purchase a range of water softening and conditioning equipment they desire which meets the specific terms of the Act. The instant ordinances improperly derogate that right by further limiting the installation and use of such equipment and by setting more stringent standards than allowed by the Act.

The City and District urge us to follow State Water Resources Control Board (SWRCB) Order No. 81-5 which concludes that the Act does not preempt local legislation. The SWRCB order opines that the legislative history of the Act shows that the state did not intend to preempt local agencies from regulating water softeners. The order claims that a fair reading of the Act does not suggest that the Act preempts local entities from placing additional limitations on the use of water softeners.

The SWRCB is an agency with primary responsibility for the coordination and control of water quality. (Wat. Code, § 13001.) The contemporaneous construction of a statute by an administrative agency charged with its enforcement is entitled to great weight by courts. (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.*, supra, 49 Cal.3d at p. 425.) We assume that the SWRCB is charged with enforcement of the Act. But, we decline to follow the SWRCB opinion because it is incorrect and it misconstrues the legislative history.

When the Act (Sen. Bill No. 2148) was introduced, it contained no express preemption language. During consideration of the bill, an amendment was introduced to create section 4046.5. Section 4046.5 would have read, in pertinent part, as follows: "The provisions of this chapter shall be mandatory for a period of at least four years after initial adoption of salinity discharge requirements by a state agency . . . . After such date, or January 1, 1983, whichever is later, a local agency, including but not limited to, a city, county, . . . sanitary district, sewer district, . . . may impose greater restrictions on the use of water softening or conditioning appliances. The provisions of this chapter shall not supersede any local ordinances adopted on or before May 10, 1978, which conflict with the provisions of this chapter." (Assem. Amend. to Sen. Bill No. 2148 (1978 Reg. Sess.) Aug. 13, 1978.)

The Legislative Counsel's Digest summary of the amended bill stated, in pertinent part, "The bill would supersede local ordinances adopted on or after May 10, 1978, which conflict with its provisions and would prohibit more restrictive local ordinances for 4 years or as specified." (Legis. Counsel's Dig. of Amended Sen. Bill No. 2148 (1978 Reg. Sess.).) The Legislature decided to jettison the amendment, and the part of the digest summary just quoted, before passing the Act.

The digest summary is misleading. Section 4046.5 would have grandfathered-in local ordinances adopted on or before May 10, 1978; created a temporary preemption period; and then it would have allowed local agencies

to impose greater restrictions on the use of water softening appliances. By rejecting the proposed amendment, the state Legislature decided not to allow local agencies to retain pre-1978 regulations and to preclude such agencies from later imposing disparate regulations in various locations throughout the state.

Instead, the state Legislature set forth uniform statewide standards as to the types of water conditioners it would permit and the regeneration standard therefor. (See especially § 116790.) The actual language of the Act, together with the legislative history including the 1980 amendment, establish the intent of the state Legislature to establish uniform statewide requirements for water softeners and to preempt the field from regulation thereon by local agencies. The Act impliedly preempts the ordinances at issue here.

## AUTHORITY UNDER OTHER STATUTES AND CALIFORNIA CONSTITUTION

### As to City

The City opines that it derives its authority to pass its ordinance from other provisions of state law, and from its police powers. It refers to article X, section 2 of the California Constitution which declares that the general welfare requires that water resources of the state not be wasted and that unreasonable methods of use must be prevented to conserve water for reasonable use. The City asserts that because its ordinance only concerns wasteful and unreasonable brine disposal, it is authorized to enact the ordinance.

The City also relies on other state statutes regarding water quality and sewage disposal laws. (Wat. Code, § 13000 et seq., known as the Porter-Cologne Act; Health & Saf. Code, § 5410 et seq.) The City explains that under Water Code section 13002 and Health and Safety Code section 5415, cities are permitted to adopt and enforce regulations restricting the disposal of various wastes and sewage. The City argues that because its ordinance concerns brine disposal, and not water softeners, the ordinance is a valid exercise of its power. We disagree with the City's positions.

The state Legislature is presumed to be aware of the constitutional and statutory provisions it has previously enacted. Article X, section 2 of the California Constitution was added in 1928. The Legislature passed the Porter-Cologne Act in 1969 and it passed the sewer and waste provisions of section 5410 et seq. in 1949. The state Legislature passed the instant Act in 1978.

The language of the instant Act establishes that the state Legislature was aware of these other provisions of state law when it passed the Act. Section

116775 expressly declares that the utilization of the waters of the state by residential consumers for general domestic purposes *is a right* and that variation in water hardness throughout the state *requires* that on-site water conditioning, *as specified in the Act, be available throughout the state to ensure the right* to an effective, functional water supply. The Act expressly permits residential users to dispose of water softener discharges to the waste disposal system for residences (i.e., the sewer system). The Act also sets forth specific water conservation methods for use in conjunction with the regeneration of on-site residential water softeners.

The state Legislature thus carved out a niche for the installation and use of on-site water softening by residential consumers which discharges brine to the general waste disposal system. The Act establishes that on-site water softening discharging brine to sewers is a reasonable method of water use consonant with the Constitution, the general provisions of the Porter-Cologne Act and the state sewerage provisions. (*Schmidt* v. *Southern Cal. Rapid Transit Dist.* (1993) 14 Cal.App.4th 23, 27 [17 Cal.Rptr.2d 340].)

### As to the District

The powers of the District are more circumscribed than those of the City. " '[T]he rule is well established that language purporting to define the powers of a municipal corporation is to be strictly construed, and . . . the power is denied where there is any fair, reasonable doubt concerning the existence of the power. [Citation.]' [Citation.]" (*Trimont Land Co.* v. *Truckee Sanitary Dist., supra,* 145 Cal.App.3d at p. 350 [concerning authority of a sanitary district to provide service to extraterritorial persons].) The only implied powers a sanitation district has are those essential to the limited, declared powers provided by its enabling act. (*Id.* at p. 346; and see Gov. Code, § 56037.)

The County Sanitation District Act enables the District to adopt ordinances to carry out certain limited, specified powers. (See §§ 4700 et seq., especially § 4766.) In the absence of county or city regulation, the district board may also adopt ordinances for the purpose of exercising and effecting any of its limited powers, or for purposes for which it was formed. (§ 4766.)

Section 4745 enables the District to ". . . construct, maintain, and operate such pipe lines or other works as may be necessary to conserve and put to beneficial use any water or sewage effluent recovered from the operation of the sewerage system, plant, or works, by sale or disposition for agricultural or industrial purposes, or by discharging or spreading the water or sewage effluent in such a manner as to percolate into the underground gravels and replenish the natural water resources."

The District urges us to construe and harmonize section 116775 together with section 4745 and other statutes because they relate to the same subject or because they have the same purpose. (See *Kendall-Brief Co.* v. *Superior Court* (1976) 60 Cal.App.3d 462, 466 [131 Cal.Rptr. 515].) The Act and the other statutes do not relate to the same subject and have different purposes.

Section 4745 only permits the District to conserve water by *disposing of effluent which it recovers from its operation of its sewerage system.* The District has the limited power to dispose of *reclaimed water* from its sewer operations. The district has no power, express or implied, under section 4745, to pass an ordinance permitting or regulating the use of state water by residential consumers at their homes for domestic purposes. It may not pass legislation restricting the installation or use of on-site residential water softeners.

The District contends its ordinance is valid because it has police power to preserve health and safety, citing *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 495 [96 Cal.Rptr. 553, 487 P.2d 1193]. We disagree. The *Younger* case found constitutional the application of legislation which established a planning agency with broad powers to deal with the ecology of the interstate Lake Tahoe region. (*Id.* at pp. 485-487, 493.) The legislation, called a "Compact," expressly permitted local agencies to enact specific and local ordinances, rules, regulations and policies which conform to the Compact's general plan it authorized. (*Id.* at p. 487-488.)

The *Younger* court explained that the state may leave to such local agencies only the power to make administrative rules which are expressly called for in the state's statutory scheme. (*People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at p. 496.) The state Legislature, however, may not grant public corporations which perform governmental functions, such as sanitation districts, the police powers which are accorded to municipalities and other municipal corporations. (*Id.* at p. 495.) In particular, the state Legislature may not grant to such public corporations authority to enact local police regulations which include penalties for their disobedience, even if such regulations were germane to the purposes for which the corporation was created. (*Id.* at pp. 495-496.)

Here, the state Legislature could not and did not delegate penal police power to the District. Instead, penal provisions for violations of the District's ordinances are set forth in section 4766. The language in the District's ordinance purporting to make violations of its provisions unlawful is beyond its power. Moreover, unlike the Compact, the ordinance here directly conflicts with the Act and the instant Act impliedly preempts the entire field of regulation of water softeners as a matter of statewide concern.

The District also argues that its ordinance is valid by dint of Water Code sections 13550 and 13553. We disagree. Section 13550 concerns the use of reclaimed water for irrigation in nonresidential settings. And section 13553 concerns the use of potable domestic water *in nonresidential structures.* These Water Code sections are consistent with the Act before us.

### NECESSITY EXCEPTION FOR HEALTH AND SAFETY

■ The City and the District claim authority under their respective police powers and under language contained in section 116775 to enact their ordinances. Under article XI, section 7 of the California Constitution, the City may make and enforce within its limits ordinances and regulations regarding its powers, *provided such ordinances do not conflict with state law.* The District is authorized to establish only the administrative rules the state expressly permits *to carry out state statutes*, including nonpenal police regulations. (*People* ex rel. *Younger* v. *County of El Dorado, supra,* 5 Cal.3d at p. 496.) Neither the City nor the District may exceed its local authority. Because the instant ordinances regulate the installation and use of water softeners in conflict with the Act, they may not invoke the use of their police power.

This purported use of such police power would also be duplicative of language used in the Act. We construe the language of legislation as a whole and we give significance to all the words contained therein. (*Bravo Vending* v. *City of Rancho Mirage, supra,* 16 Cal.App.4th at p. 398.) Section 116775 declares that effective residential use of water by on-site water softeners to be a right "which should be interfered with only when necessary for specified health and safety purposes."

Because the City and the District already have police powers to regulate health and safety matters, it would have been duplicative for the state to "give" local entities the right to enact legislation for health and safety purposes. The phrase in the Act allowing interference for specified health and safety purposes would be meaningless if all it did was refer to a power already reposed in the City and District. Moreover, the Act does not call for administrative or penal regulations of the type sought in these ordinances. When the Act is read as a whole, the phrase means that the state may interfere with use of its waters through regulation when required by reasons of health and safety.

Moreover, neither ordinance states a finding of necessity of any kind, much less for specified health or safety purposes. These ordinances were passed as ordinary legislation; they were not passed as urgency measures.

We understand the concern expressed by appellants and amici curiae about the increase in TDS in groundwater resulting from the discharge of brine waste into sewers by on-site residential water softeners. But, the state Legislature has spoken on the subject of such softeners, and established uniform statewide rights and regulations therefor. The state has thus removed the subject matter from the restrictions imposed by the instant ordinances. There may be, as respondents have suggested, numerous other means by which they may deal with increased TDS in waste water. If, however, appellants and amici curiae desire to further restrict on-site residential water softeners, they must seek amendment or repeal of the instant state statutory scheme.

The judgment is affirmed. Costs to respondents.

Stone (S. J.), P. J., and Yegan, J., concurred.

The petition of appellant City of Santa Maria for review by the Supreme Court was denied August 14, 1996.