*759
 
 Opinion
 

 HUFFMAN, Acting P. J.
 

 The City of Escondido (the City) enacted an ordinance which established a water reclamation plan and, pursuant to that objective, prohibited the use of a certain type of water softening appliance, the self-regenerating or automatic water softener, within a particular water service area. (City of Escondido Ord. No. 91-3, § 6.5 (the ordinance).) The City maintained this ordinance was an exercise of its municipal police power to enact sanitation measures, particularly to prevent excessive deposits of salt in the reclaimed water supply.
 

 Plaintiffs Water Quality Association (WQA), a trade association of the point-of-use water quality improvement industry, and Coastal Cities Water Treatment, Inc. (Coastal), a water softening business (sometimes referred to as respondents), sued the City on a number of theories, seeking to invalidate the ordinance. The trial court ruled in favor of WQA and Coastal on a preemption cause of action, based on Health and Safety Code
 
 [1]
 
 section 116775 et seq., and issued declaratory and injunctive relief against the enforcement of the ordinance. The City, joined by intervener San Diego County Water Authority (the Water Authority) (author of a model ordinance on which the City based its version)(sometimes referred to as appellants), appeal. Numerous amici curiae on both sides have joined the fray.
 
 [2]
 

 
 *760
 
 In
 
 Water Quality Assn.
 
 v.
 
 County of Santa Barbara
 
 (1996) 44 Cal.App.4th 732 [52 Cal.Rptr.2d 184]
 
 (Water Quality Assn.),
 
 the Second District Court of Appeal rejected claims by a city and a sanitation district that were essentially identical to those made here by the City, i.e., that under a number of related constitutional and statutory provisions, a municipality has the right to regulate and ban certain types of water softening devices. (See, e.g., Cal. Const., art. X, § 2; Wat. Code, § 13000 et seq.) Rather, the Court of Appeal found those portions of those ordinances to be void as in conflict with the state statutory scheme regulating water softeners. (§ 116775 et seq.) As will be explained below, we are in agreement with this reasoning, as applied to these facts, and affirm the trial court’s ruling.
 

 Factual and Procedural Background
 

 The City’s water reclamation ordinance was enacted to supplement existing water supplies and to assist in meeting future water requirements of the state. (Wat. Code, § 13510.) In the section under attack here, the ordinance provides: “Reclaimed water with high salt levels is not usable for the major City applications. It is therefore necessary to eliminate major sources of brine discharges. Self-regenerating water softeners are recognized as a major contributor of saline. It is the determination of the City that regenerative water softeners within the Hale Avenue service area may cause substantial harm or damage to potential users of reclaimed water; therefore, installation of any regenerative water softening device shall be prohibited. Existing on-site regenerative water softeners shall be removed upon resale of any residential property."
 
 [3]
 

 
 *761
 
 WQA and Coastal promptly brought suit challenging this portion of the ordinance as preempted by section 116775 et seq.
 
 [4]
 
 The legislative findings and declarations for this statutory scheme state: “The Legislature hereby finds and declares that the utilization of the waters of the state by residential consumers for general domestic purposes, including drinking, cleaning, washing, and personal grooming and sanitation of the people is a right that should be interfered with only when necessary for specified health and safety purposes. The Legislature further finds that variation in water quality, and particularly in water hardness, throughout the state requires that on-site water softening or conditioning be available throughout the state to insure to domestic consumers their right to a water supply that is effective and functional for domestic requirements of the residential household, but that the on-site water softening or conditioning shall be available only as hereinafter set forth.” (§ 116775.)
 

 Subsequent sections set forth definitions of terms (§ 116780) and limitations on the manner and type of installation of water softening or conditioning appliances in residences, and set certain efficiency and conservation requirements (§ 116785). Specifically, automatic devices may not be installed unless they meet a certain salt efficiency rating and are installed in connection with other water conservation devices. In section 116790, a “grandparent” clause to allow older units to operate is provided, and in section 116795, a certification requirement is imposed.
 

 At trial, the administrative record of the proceedings before the city council was admitted into evidence, along with many other exhibits, and extensive testimony was taken from responsible public officials and experts in the field. Some of the testimony focused on the city’s plans and five-year pilot program to sell reclaimed water to avocado farmers, whose crops will not tolerate a high level of salinity in irrigation. Such salinity appears, as do other pollutants, in the form of total dissolved solids (TDS) in the water supply (the higher the TDS, the lower quality the water). However, many greenbelt areas (e.g., parks, median strips, and golf courses) can be successfully irrigated with reclaimed water that has relatively high salinity.
 

 Testimony was taken that between 5 percent and 11.5 percent of the TDS found in local reclaimed water was from discharge from automatic water softening devices. Approximately 20 percent of water users in the area soften their water, and about half of those users employ automatic softening
 
 *762
 
 devices which discharge amounts of brine into the wastewater stream. The remainder use portable exchange units, which are not barred by the ordinance.
 

 After trial, the court issued a thorough memorandum decision, eventually deemed the statement of decision. Discussing the facts, the court noted that the City had a pending deal to sell its excess reclaimed water processing capacity to the City of San Diego for processing of wastewater from an aquaculture plant; such discharges will add substantial additional TDS to the Hale Avenue treatment plant influent. On the preemption issue, the court concluded that there were both apparent and real conflicts between the statute and the ordinance, under statutory construction and preemption principles.
 

 The City sought a new trial, based in part on a declaration by an attorney with the State Water Resources Control Board (the SWRCB), who was formerly its legislative coordinator and who was involved in the proceedings leading up to the enactment of former section 4045 et seq. His declaration stated that the SWRCB opposed adding language to the bill which would have clearly preempted local communities from also regulating water softening devices. No such language was ever enacted. The trial court rejected this argument and denied the new trial motion. Judgment was entered, and the City and interveners appeal.
 

 Discussion
 

 Here, as in
 
 Water Quality Assn., supra,
 
 44 Cal.App.4th at pages 745-746, we ask if this ordinance is preempted by the water softening statutes, and apply these standards: “Interpretation of legislation presents questions of law which we review de novo. [Citation.] We determine the intent of the Act so as to effectuate its purpose. [Citations.] We construe the Act as a whole and consider all its words according to their usual commonsense meaning. [Citation.]
 

 “We presume the validity of local ordinances. [Citations.] A general law city, such [as] the City, ‘. . . may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations
 
 not in conflict with general laws.’
 
 (Cal. Const., art. XI, § 7, italics added.) Where local legislation conflicts with general law, the local ordinance is void. [Citations.]
 

 “An otherwise valid ordinance is preempted by state statute if the ordinance duplicates or contradicts the statute, or if the ordinance enters into a
 
 *763
 
 field of regulation expressly or impliedly reserved to the state. [Citations.] The ultimate question concerning preemption is whether the ordinance conflicts with the state statute. [Citation.]” (44 Cal.App.4th at pp. 740-741 .)
 
 [5]
 

 A further test applies to an implied preemption claim: “ ‘ “In determining whether the Legislature has preempted by implication to the exclusion of local regulation we must look to the whole purpose and scope of the legislative scheme. There are three tests: ‘(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality.’” [Citations.]’ [Citation.]”
 
 (Water Quality Assn., supra,
 
 44 Cal.App.4th at pp. 742-743.)
 
 [6]
 

 The City’s arguments that it must have authority to enact this type of ban on automatic water softeners fall into three basic categories, which we discuss separately.
 

 I
 

 No Actual Conflict Due to Different Fields of Regulation?
 

 According to the City and intervener Water Authority, section 116775 addresses three major concerns, none of which is antithetical to the subjects covered in its ordinance. These concerns are (1) the right of residential consumers in the state to use water for general domestic purposes, subject to limitation only for specified health and safety purposes; (2) local variations in water quality which may require the availability of water softening to ensure an effective, functional supply; and (3) limitations on the
 
 *764
 
 types of water softeners which may be used. From this summary of the statute, the appellants conclude that the right of residential consumers to use water is not absolute, and local agencies must be accorded the flexibility to deal with the relationship between their geographical location and the available water supply. Such flexibility should include restricting the type of water softening units which may be used, they say, as long as some water softening is still allowed.
 

 In particular, the appellants rely on a 1981 administrative interpretation of the statute by the SWRCB to the effect that the statute was not intended to preempt local agencies (i.e., the City of Lompoc) from prohibiting the use of water softeners. (See
 
 International Business Machines
 
 v.
 
 State Bd. of Equalization
 
 (1980) 26 Cal.3d 923, 930-931 [163 Cal.Rptr. 782, 609 P.2d 1] [contemporary administrative interpretation of statute generally entitled to great weight].)
 
 [7]
 
 In short, they contend that the relevant question is to define the field of endeavor that the ordinance operates in, and that the trial court defined it too narrowly, without attention to the overall scope of statutes in this area. (See
 
 Candid Enterprises, Inc.
 
 v.
 
 Grossmont Union High School Dist.
 
 (1985) 39 Cal.3d 878, 886, fn. 4 [218 Cal.Rptr. 303, 705 P.2d 876].)
 

 Appellants and amici curiae go on to argue that the legislative history of former section 4045 (now § 116775) indicates that no preemptive effect was intended. They rely on preemption language that was proposed to be included in the bill creating former section 4045 et seq., but that was never enacted.
 
 [8]
 
 This argument was decisively rejected by the court in
 
 Water Quality Assn., supra,
 
 44 Cal.App.4th at pages 744-745, as part of its conclusion that the Act impliedly preempts local ordinances which would further regulate water softener availability:
 

 “Section 4046.5 would have grandfathered-in local ordinances adopted on or before May 10, 1978; created a temporary preemption period; and then it would have allowed local agencies to impose greater restrictions on the use of water softening appliances. By rejecting the proposed amendment, the state Legislature decided not to allow local agencies to retain pre-1978 regulations and to preclude such agencies from later imposing disparate regulations in various locations throughout the state.
 

 
 *765
 
 “Instead, the state Legislature set forth uniform statewide standards as to the types of water conditioners it would permit and the regeneration standard therefor. (See especially § 116790.) The actual language of the Act, together with the legislative history including the 1980 amendment, establish the intent of the state Legislature to establish uniform statewide requirements for water softeners and to preempt the field from regulation thereon by local agencies.” (44 Cal.App.4th at pp. 744-745.)
 

 We agree with respondents that a finding of conflict between the ordinance and the statutory scheme is inescapable here. Under preemption principles, there is a presumption against implied repeal, which may be overcome only if the two acts are irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation.
 
 (Western Oil & Gas Assn.
 
 v.
 
 Monterey Bay Unified Air Pollution Control Dist.
 
 (1989) 49 Cal.3d 408, 419-420 [261 Cal.Rptr. 384,
 
 111
 
 P.2d 157].) Here, water softening units that would be allowed under section 116775 et seq. would be banned under the ordinance. The ordinance regulates the possession, installation, and use of water softeners differently than does the statutory scheme. It is not possible to read the ordinance as operating in a larger field that than covered by section 116775 et seq., and thus as a viable exercise of municipal power.
 

 II
 

 Alternative Sources of Authority to Regulate?
 

 The City’s and intervener Water Authority’s next theory is that section 116775 et seq. should be read in the context of and harmonized with other water quality statutes and statutory authorizations to conduct a water reclamation program. (See, e.g., Wat. Code, § 13000 et seq., the Porter-Cologne Act; Wat. Code, § 13500 et seq., the Water Recycling Law; Wat. Code, § 13575 et seq., the Water Recycling Act of 1991; also see Wat. Code, §461, promoting the maximum use of reclaimed water.)
 
 [9]
 
 Under this approach, the constitutional mandate of California Constitution, article X, section 2 (that water resources must be put to beneficial use to the fullest extent possible, with unreasonable use of water to be prevented) requires municipalities and other public entities to be allowed to balance and compare competing uses of water. (See
 
 Imperial Irrigation Dist.
 
 v.
 
 State Wat.
 
 
 *766
 

 Resources Control Bd.
 
 (1990) 225 Cal.App.3d 548, 570 [275 Cal.Rptr. 250];
 
 Brydon
 
 v.
 
 East Bay Mun. Utility Dist.
 
 (1994) 24 Cal.App.4th 178, 193 [29 Cal.Rptr.2d 128].)
 

 In rejecting this same argument in
 
 Water Quality Assn., supra,
 
 44 Cal.App.4th at pages 745-746, the Court of Appeal explained:
 

 “Section 116775 expressly declares that the utilization of the waters of the state by residential consumers for general domestic purposes
 
 is a right
 
 and that variation in water hardness throughout the state
 
 requires
 
 that on-site water conditioning,
 
 as specified in the Act, be available throughout the state to ensure the right to
 
 an effective, functional water supply. The Act expressly permits residential users to dispose of water softener discharges to the waste disposal system for residences (i.e., the sewer system). The Act also sets forth specific water conservation methods for use in conjunction with the regeneration of on-site residential water softeners.
 

 “The state Legislature thus carved out a niche for the installation and use of on-site water softening by residential consumers which discharges brine to the general waste disposal system. The Act establishes that on-site water softening discharging brine to sewers is a reasonable method of water use consonant with the Constitution, the general provisions of the Porter-Cologne Act and the state sewerage provisions. [Citation.]”
 
 (Water Quality Assn., supra,
 
 44 Cal.App.4th at pp. 745-746, original italics.)
 

 The same analysis governs here. Moreover, it is well recognized that water and sewage treatment projects can transcend the borders of one or more municipalities, and under such circumstances, such projects cease to be solely municipal affairs and come within the domain and regulatory scope of the general laws of the state.
 
 (City of Santa Clara
 
 v.
 
 Von Raesfeld
 
 (1970) 3 Cal.3d 239, 246-247 [90 Cal.Rptr. 8, 474 P.2d 976].) Such is the case here. There is a real danger of conflicting local regulations among neighboring communities on this subject, pointing toward the need for and existence of statewide regulation.
 
 [10]
 

 III
 

 Does Statutory Health and Safety Exception Apply?
 

 To argue that despite preemption principles, the City retains power to enact this ordinance, it relies on authority creating municipal police
 
 *767
 
 powers (Cal. Const., art. XI, §7), and the language in section 116775, referring to the “specified health and safety purposes” that would justify interfering with the statutory right to domestic use of water. It thus argues the Legislature intended that municipalities, not only the state, should be able to decide if such health and safety purposes apply to a given situation. The court in
 
 Water Quality Assn., supra,
 
 44 Cal.App.4th at page 748, rejected the municipality’s identical argument, stating that there was a clear conflict with state law, and further stated that:
 

 “This purported use of such police power would also be duplicative of language used in the Act. We construe the language of legislation as a whole and we give significance to all the words contained therein. [Citation.] Section 116775 declares that [sic] effective residential use of water by on-site water softeners to be a right ‘which should be interfered with only when necessary for specified health and safety purposes.’
 

 “Because the City and the District already have police powers to regulate health and safety matters, it would have been duplicative for the state to ‘give’ local entities the right to enact legislation for health and safety purposes. The phrase in the Act allowing interference for specified health and safety purposes would be meaningless if all it did was refer to a power already reposed in the City and District. Moreover, the Act does not call for administrative or penal regulations of the type sought in these ordinances. When the Act is read as a whole, the phrase means that the state may interfere with use of its waters through regulation when required by reasons of health and safety.” (44 Cal.App.4th at p. 748.)
 

 Once again, the same reasoning applies here.
 

 IV
 

 Conclusion
 

 Finally, despite the important policy issues and legislative facts concerning this and other municipalities that have been presented here by both appellants and amici curiae, we have found no basis to support municipal authority to enact this type of ban on automatic water softeners, in light of the occupation of the field by state law. However, we echo the court’s concerns set out in
 
 Water Quality Assn., supra,
 
 44 Cal.App.4th at page 749: “We understand the concern expressed by appellants and amici curiae about the increase in TDS in groundwater resulting from the discharge of brine waste into sewers by on-site residential water softeners. But, the state Legislature has spoken on the subject of such softeners, and established
 
 *768
 
 uniform statewide rights and regulations therefor. The state has thus removed the subject matter from the restrictions imposed by the instant ordinances. There may be, as respondents have suggested, numerous other means by which they may deal with increased TDS in waste water. If, however, appellants and amici curiae desire to further restrict on-site residential water softeners, they must seek amendment or repeal of the instant state statutory scheme.”
 

 Disposition
 

 The judgment is affirmed.
 

 McDonald, J., and Jones, J.,
 
 *
 
 concurred.
 

 [1]
 

 All further statutory references are to the Health and Safety Code unless otherwise noted. Section 116775 et seq., dealing with water softeners, as now found in the Water Equipment and Control Act (the Act), were formerly numbered section 4045 et seq., as enacted in 1978; they were reenacted and renumbered in 1995, without substantive change.
 

 [2]
 

 In support of appellants’ position, the Association of California Water Agencies, the California State Water Resources Control Board, the California Association of Sanitation Agencies, the Leucadia County Water District, the San Elijo Joint Powers Authority, and the Cities of Alameda, Anaheim, Arroyo Grande, Avalon, Bakersfield, Banning, Bell Gardens, Big Bear Lake, Buellton, Burbank, Burlingame, Camarillo, Carlsbad, Cathedral City, Cerritos, Chula Vista, Coronado, Dana Point, Del Mar, Del Rey Oaks, Dinuba, El Cajon, Encinitas, Eureka, Exeter, Farmersville, Galt, Gilroy, Glendale, Huron, Imperial Beach, Indio, Kings-burg, La Mesa, Lake Forest, Lemon Grove, Lindsay, Livermore, Long Beach, Los Altos, Los Angeles, Manteca, Marina, Milpitas, Modesto, Monterey, Moorpark, Moreno Valley, Morgan Hill, Mountain View, Napa, National City, Nevada City, Oceanside, Orange Cove, Palm Desert, Palm Springs, Palo Alto, Petaluma, Pico Rivera, Pleasanton, Porterville, Poway, Redlands, Riverside, St. Helena, San Bruno, San Buenaventura, San Diego, San Jose, San Juan Bautista, San Luis Obispo, San Rafael, Santa Ana, Santa Barbara, Santa Cruz, Santa Maria, Santee, Signal Hill, Solana Beach, South Lake Tahoe, Sunnyvale, Tracy, Tulare, Turlock, Tustin, Vacaville, Visalia, Walnut, Watsonville, West Covina, Woodlake, the City and County of San Francisco, County of Fresno, County of Santa Barbara, Town of Portóla Valley, Cambria Community Services District, Laguna County Sanitation District and the San Dieguito Water District have filed amicus briefs. In support of respondents, other trade associations and businesses, Ecowater Systems, Inc., Kinetico Incorporated, Rainsoft Water Conditioning Company, the California Restaurant Association, the California Hotel and Motel
 
 *760
 
 Association, the California Fabricare Institute, Culligan International Company, Culligan Peninsula Industrial Water Conditioning Company, and Culligan Water Conditioning of Orange County have weighed in, all giving extensive background and legislative facts for judicial notice on these important policy issues. (See Cal. Law Revision Com. com., 29B West’s Ann. Evid. Code (1995 ed.) § 450, p. 420; 1 Witkin, Cal. Evidence (3d ed. 1986) Judicial Notice, § 85, pp. 78-79; Cal. Rules of Court, rule 14(c).)
 

 [3]
 

 Section 3.7 of the ordinance defines regenerative water softeners as devices which automatically or manually renew their capability to remove hardness (mineral deposits) from water “by the application of a brine solution or sodium chloride or potassium chloride salt to the active softening or conditioning material contained therein followed by a subsequent rinsing of the active material
 
 and which discharges to the waste disposal system at the location where such appliance is used.”
 
 (Italics added.) The section then specifies that the ordinance is not intended to prohibit water softening appliances which use a portable exchange unit
 
 and which do not discharge brine directly into the waste disposal systems at the installed location.
 
 Rather, such portable units produce discharge which is treated at commercial treatment facilities.
 

 [4]
 

 The WQA/Coastal complaint also challenged the ordinance on a number of other theories, none of which was successful and none of which is argued on this appeal (California Environmental Quality Act (CEQA) violations [Pub. Resources Code, § 21000 et seq.], due process and equal protection violations, and governmental taking without just compensation).
 

 [5]
 

 The City is a general law city, not a chartered city. The parties make extensive arguments about whether different standards apply to the two types of cities concerning preemption. (See
 
 Wiltshire
 
 v.
 
 Superior Court
 
 (1985) 172 Cal.App.3d 296 [218 Cal.Rptr. 199].) We are not required to discuss this issue here as the matter may be resolved by analysis of the face of the two enactments.
 

 [6]
 

 Of these three tests, it is essentially not disputed that only the second applies here. The first test refers to matters of exclusive state concern; water reclamation is not such a matter, due to the historic role of municipalities in water treatment. The third test, referring to the rights of transient citizens of the state, is not applicable to this ordinance, which deals with residential use of water softening devices. However, the second test is just right, referring to a partially occupied legislative field, the availability and use of water softeners.
 
 (Water Quality Assn., supra,
 
 44 Cal.App.4th at p. 743.)
 

 [7]
 

 Amicus curiae the Attorney General’s Office has provided evidence by judicially noticeable material of another similar administrative interpretation, contained in a water quality control plan for the Colorado River Basin region. (Evid. Code, § 452, subd. (c).)
 

 [8]
 

 We do not find the declaration presented in support of the new trial motion by the SWRCB’s former legislative coordinator to be persuasive about legislative intent. An individual legislator’s opinion is not a strong indicator of the overall intent of the Legislature, and the same holds true for an individual participant in the proceedings leading up to enactment of a law. (See 58 Cal.Jur.3d, Statutes, § 163, pp. 565-568.)
 

 [9]
 

 For example, Water Code section 13002 provides in pertinent part: “No provision of this division or any ruling of the state board or a regional board is a limitation: [1(a) On the power of a city or county or city and county to adopt and enforce additional regulations,
 
 not in conflict therewith,
 
 imposing further conditions, restrictions, or limitations with respect to the disposal of waste or any other activity which might degrade the quality of the waters of the state.” (Italics added.)
 

 [10]
 

 In this connection, appellants argue that respondents improperly rely on the evidence that the City intends to sell excess treatment capacity to another municipality, which may lead to increased TDS in the water. This was only one of the factors the trial court took into account and we do not reweigh the evidence.
 

 *
 

 Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.