TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

ROB BONTA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 24-101 |
| of | : | |
| | : | January 22, 2025 |
| ROB BONTA | : | |
| Attorney General | : | |
| | : | |
| SUSAN DUNCAN LEE | : | |
| Deputy Attorney General | : | |

The HONORABLE TIFFANY NORTH, COUNTY COUNSEL FOR THE COUNTY OF VENTURA, has requested an opinion on a question relating to a groundwater management district's statutory hiring power.

**QUESTION PRESENTED AND CONCLUSION**

The Fox Canyon Groundwater Management Agency was created by the Legislature, as reflected in Water Code Appendix sections 121-102 to 121-1105.[1]  Does this statutory scheme allow the Agency to hire its own staff, or to contract with an entity other than the County of Ventura or the United Water Conservation District for staff services?

---

[1] Many water districts in California have been formed through uncodified legislative acts, which have been collected and maintained for the benefit of the public in the Water Code Appendix.  (See Preface, 70C West's Ann. Wat. Code (2010 ed.) p. III; see also Legislative Intent Service, Inc., California Water Code Statutory History, http://www.legintent.com/california-water-code-statutory-history, Sept. 8, 2017 (as of Jan. 22, 2025).)

24-101

No.  The statutory scheme establishes the Agency's power to contract for staff services, and it limits that power to contracting with the two agencies specified in the statute, which are the County of Ventura and the United Water Conservation District.

**BACKGROUND**

The Fox Canyon Groundwater Management Agency is a special water agency created by the Legislature in 1982 to manage and conserve groundwater resources for agricultural, municipal, and industrial uses, for the common benefit of all water users.[2] The Agency's formation was prompted by a State Water Board investigation into seawater intrusion beneath the Oxnard Plain Basin in Ventura County.  Completed in 1979, the investigation found that seawater intrusion into the Oxnard Plain was affecting 20 square miles of the basin despite continuing local mitigation efforts.  To address the seawater intrusion problem, Ventura County and the United Water Conservation District sought and obtained the Legislature's approval to establish the Agency.[3]

To carry out its mission to preserve fresh groundwater resources, the Agency prepares annual work plans, budgets, and management reports; quarterly work plans and budget status reports; and monthly decision items such as ordinances and resolutions.[4] Since its creation, the Agency has relied on contracts with Ventura County for its staffing needs.

**ANALYSIS**

The Ventura County Counsel has asked for our opinion as to whether Water Code Appendix section 121-408 permits the Agency to hire its own staff, or to contract with an entity other than the County of Ventura or the United Water Conservation District for staff services.

Familiar principles of statutory interpretation guide our consideration of this question.  Our primary task in interpreting a statute is to determine the Legislature's

---

[2] Stats. 1982, ch. 1023 (Fox Canyon Groundwater Management Agency Act); Wat. Code App., §§ 121-102–121-1105.

[3] The United Water Conservation District is a local agency that conserves and enhances water resources in the Santa Clara River Valley and the Oxnard Plain.  (See United Water Conservation District, About Us, https://www.unitedwater.org/about-us (as of Jan. 22, 2025).)

[4] See FCGMA, Brief History Overview (Jan. 2015), p. 3, available at https://fcgma.org/wp-content/uploads/2022/05/FCGMA_History_Edit_PK.pdf (as of Jan. 22, 2025).

24-101

intent, so that we can apply the statute in a way that carries out its intended purpose.[5]  In examining a statute's language, we are to give the words their ordinary, everyday meaning unless the context requires otherwise.[6]  The statutory language should be examined "in the context of the entire statute and the statutory scheme," and in a manner that gives significance to "every word, phrase, sentence, and part" of the legislative act.[7]

We begin with the text.  Here, we analyze a statute that defines the scope of the groundwater conservation district's hiring authority.  The Agency's hiring power is set forth in section 121-408, which states:

> The agency may contract with the county or United for staff and other services and may hire such other contractors and consultants as it considers appropriate.[8]

On its face, this language addresses two categories of authority: (1) to contract with the County of Ventura or the United Water Conservation District for "staff and other services"; and (2) to hire "other contractors and consultants."  These terms are not expressly defined by the Agency's enabling act, but we can understand their contours by referring to general authorities.

As to the first category of authority, the term "staff" is well understood as referring to the personnel responsible for the internal operations of an institution.[9]  The term "other services" is more vague, but by its association with the term "staff" we believe it may be fairly understood as including the kinds of things (besides staff) that either the County or United could be expected to provide to support the Agency's regular

---

[5] *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1037.

[6] *Halbert's Lumber, Inc. v. Lucky Stores, Inc.* (1992) 6 Cal.App.4th 1233, 1238.

[7] *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 673; *Tuolumne Jobs & Small Business Alliance v. Superior Court*, *supra*, 59 Cal.4th at p. 1038; see also *Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 386 (statutes should not be read in way that renders language meaningless).

[8] We interpret the permissive term "may" here as allowing the Agency to exercise either or both staffing options (County or United) authorized by section 121-408, rather than forcing a choice between the two options.  (See *Compton College Federation of Teachers v. Compton Community College Dist.* (1982) 132 Cal.App.3d 704, 711–712.)

[9] E.g., American Heritage Dict., 4th ed., p. 802 ("the personnel of an enterprise"); Merriam-Webster's Collegiate Dict., 11th ed., p. 1213 ("officers chiefly responsible for the internal operations of an institution or business . . . a group of officers appointed to assist a civil executive . . . the personnel who assist a director in carrying out an assigned task").

3

internal operations, such as office space, photocopying and other document management services, mail and delivery services, and the like.[10]

As to the second category of "other contractors and consultants," we can understand more about these terms from their position and juxtaposition within the statute. Importantly, we believe that the term "other contractors and consultants" must necessarily mean something distinct from "staff and other services," otherwise there would be no point in using the two different phrases within the one statute. It is contrary to general principles of statutory construction to interpret a statute in a way that makes some of its words mere surplusage.[11] Further, the words "contractors and consultants" are part of a longer phrase, i.e., "[the agency] may hire such other contractors and consultants as it considers appropriate." The words "such other" denote, again, a distinction between contractors and consultants on the one hand, and staff and other services on the other. And the words "as it considers appropriate" suggest a measure of discretion in the Agency about how to hire such assistance, if at all. Whereas the Agency can obtain "staff and other services" only from the County or United, it can retain "other contractors and consultants" from any source "it considers appropriate."[12]

With those considerations in mind, we now consider whether the statute allows the Agency to hire its own staff, or to contract with an entity other than the County or United for staff services. We conclude that it does not. Because the Agency's second category of authority extends only to contracting for non-staff services, we conclude that the Agency may contract for staff only with the County or United.

Generally speaking, a statutory grant of authority is considered to carry the implied negative that no power may be exercised which is more than the authority granted.[13] That general principle supports the view that, by expressly authorizing the

---

[10] See *California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 189 ("*Noscitur a sociis* (literally, 'it is known from its associates') means that a word may be defined by its accompanying words and phrases, since 'ordinarily the coupling of words denotes an intention that they should be understood in the same general sense.' (2A Sutherland, Statutory Construction (6th ed. 2000) § 47.16, pp. 268–269, fn. omitted)."); *Yates v. United States* (2015) 574 U.S. 528, 545 (plur. opn. of Ginsburg, J.) (describing related canon of *ejusdem generis*).

[11] See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 ("A construction making some words surplusage is to be avoided").

[12] For example, the Requestor reports that the Agency has used its authority to hire non-staff "contractors and consultants" to retain a technical consulting firm to assist with the Agency's five-year evaluation of its groundwater sustainability plan.

[13] 79 Ops.Cal.Atty.Gen. 128 (1996), citing *Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 196, and *Safer v. Superior Court* (1975) 15 Cal.3d 230, 236–238.

4

Agency to "contract with the county or United for staff and other services," the Legislature foreclosed the Agency from contracting with other entities for staff services. Significantly, the Legislature made a different choice in another, comparable enactment. The enabling legislation for the Ojai Basin Groundwater Management Agency was enacted in 1991 and otherwise echoes section 121-408. In contrast to section 121-408, however, the Ojai agency's enabling legislation provides: "The agency *may contract for staff and other services* and may hire other contractors and consultants."[14] The difference in language is clear, and strongly suggests that the restrictive phrase "with the county or United" in section 121-408 was meant to limit the Agency's staffing options.[15]

Of course, we should consider the text of section 121-408 not only within itself, but also as it relates to the whole statutory scheme of which it is a part. The statutory scheme reveals that the Agency has implied powers to carry out its objectives and purposes in addition to its express powers. The Fox Canyon Groundwater Management Agency Act provides that the Agency "shall exercise the powers granted by this act for purposes of groundwater management within the boundaries of the agency, together with such other powers as are reasonably implied and necessary and proper to carry out the objectives and purposes of the agency."[16]

But we see no basis for concluding that the Agency has implied power to hire personnel to assist in administering the regular business of the district. Section 121-102 itself limits the Agency's implied powers to those that are "necessary and proper to carry out the objectives and purposes of the agency."[17] Some reasonable level of staffing is certainly necessary to carry out the agency's work, but section 121-408 does not leave the Agency bereft of staff; it merely limits the Agency to a hiring pool consisting of staff that have been hired through the County or through United.[18] The implied powers doctrine may not be used to circumvent this express restriction on the Agency's contracting authority.[19]

Furthermore, when a statute prescribes the manner and mode by which a power may be exercised, courts have held that the mode prescribed is the measure of the

---

[14] Wat. Code App., § 131-409.

[15] See *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 825.

[16] Wat. Code App., § 121-102.

[17] *Water Quality Assn. v. County of Santa Barbara* (1996) 44 Cal.App.4th 732, 746.

[18] *Podiatric Medical Board of California v. Superior Court of City and County of San Francisco* (2021) 62 Cal.App.5th 657, 673 (no need to resort to implied powers when existing statute addresses actual power).

[19] 2A McQuillin, Municipal Corporations (3d ed., 2024 update) § 10:13.

5

power.[20]  In other words, by expressly providing that the Agency may contract for staff services with either the County or United, section 121-408 both grants a measure of authority and prescribes the mode of exercising that authority.  Were the Agency to engage a different party to provide staff services, it would be disregarding the mode prescribed by the Legislature for hiring staff.[21]  All points considered, we find no support in the Agency's enabling legislation for concluding that the Agency may hire its own staff, or contract with an entity other than the County of Ventura or the United Water Conservation District for staff services.

Finally, we consider whether the Agency might derive its hiring authority from another source.  Beyond its enabling legislation, the Agency has the same authority as any other special district to contract for "special services and advice" under Government Code section 53060, which provides in pertinent part:

> The legislative body of any public or municipal corporation or district may contract with and employ any persons for the furnishing to the corporation or district special services and advice in financial, economic, accounting, engineering, legal, or administrative matters if such persons are specially trained and experienced and competent to perform the special services required.

By its express terms, Government Code section 53060 is limited to contracting for "special services and advice."  The term "special services" has been construed by courts to mean services that are unique, unusual, or out of the ordinary.[22]  Whether services may be considered "special" depends on factors including the qualifications of the person furnishing the services, and whether such services are available from public sources.[23]  Staff services such as preparing regular reports, plans, and budgets would be considered neither unique nor out of the ordinary, and would therefore not fall within the hiring authority of section 53060.  So we do not see how section 53060 could supply the Agency with authority to contract for staff other than with the County or United.

---

[20] *Ibid*., citing *People v. Zamora* (1980) 28 Cal.3d 88, 98, and *Wildlife Alive v. Chickering*, *supra*, 18 Cal.3d at p. 196.

[21] See *Bottoms v. Madera Irr. Dist.* (1925) 74 Cal.App. 681, 698–699 (statutory grant of power must be exercised in accordance with limitations and restrictions on mode of exercise of granted power).

[22] *Costa Mesa City Employees' Assn. v. City of Costa Mesa* (2012) 209 Cal.App.4th 298, 315–316; see *Jaynes v. Stockton* (1961) 193 Cal.App.2d 47, 51.

[23] *Darley v. Ward* (1982) 136 Cal.App.3d 614, 627–628 (services may be considered "special" because person furnishing them has outstanding skill or expertise).

Given the express language of Water Code Appendix section 121-408 addressing staffing, we conclude that the Fox Canyon Groundwater Management Agency may contract only with the County of Ventura and the United Water Conservation District for staffing services.

24-101